NUMBER 13-99-047-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


ELIAS ESEQUIEL MORALES ELIZONDO Appellant,


v.



THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 370th District Court


of Hidalgo County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez and Rodriguez



Opinion by Justice Chavez



 

 Appellant Elias Elizondo was convicted of murder and sentenced
to twenty-five years in prison. On appeal, he makes three complaints
regarding the jury charge, argues that he was denied his constitutional
right to a speedy trial, and alleges various errors in the admission and
exclusion of evidence. We overrule these contentions and affirm the
trial court's judgment. 

 The body of the victim, Arron Ortega, was found in an alley behind
the backyard of Elizondo's house in McAllen. He had been shot with a
sixteen gauge shotgun. In the course of interviewing people who lived
in the area, police spoke with Elizondo's mother. She told police that
her son was in Beeville. The police told her that they wanted to speak
with her son, and Elias came to the police station to give a statement. 
The police told Elizondo that he was a possible suspect and read him
his Miranda rights. Elizondo's statement, which was reduced to
writing in the form of an affidavit, stated that he had spent the day with
Ortega drinking beer and playing pool. He said Ortega had also smoked
marijuana and taken cocaine, although Elizondo denied any marijuana
or cocaine use himself. Ortega also had a gun with him that he was
trying to sell, and Ortega told Elizondo that he had sold the gun,
although Elizondo did not witness the sale. Elizondo and Ortega were
preparing to walk through the alley behind Elizondo's house to a store
to buy cigarettes when Elizondo saw three men shoot Ortega. Elizondo
stated that he then ran back into his house, fearing for his life. Still
considering Elizondo a suspect, police obtained consent from Elizondo's
mother to search their house, and they found two sixteen gauge
shotgun shells in Elizondo's bedroom. The investigating officer then
told Elizondo's mother that her son was a suspect in the murder and
that he needed to speak with her son again. The officer mentioned
obtaining a warrant for Elizondo's arrest, but his mother asked that she
be given a few days to persuade her son to come to the police station
voluntarily, and the officer agreed. 

 Elizondo did come to the police station, accompanied by his
mother. There, an officer read Elizondo his rights, and Elizondo gave
a different statement. This time Elizondo said he had been arguing with
Ortega when he went back into the house to get a shotgun to "scare"
Ortega. When Elizondo came back out, Ortega appeared to be gone and
the back gate was open. Elizondo went to close the back gate and saw
Ortega at the end of the alley. Elizondo stated he was "afraid of Arron
because he liked to fight and he is pretty bad." Ortega charged at him,
shouting "Orale, pinche puto!(1) Let's see what you're made of!" while
reaching behind him. Fearing that Ortega was retrieving a gun,
Elizondo shot him with the shotgun and ran toward his house. While
running, he fell and the shotgun broke apart. Elizondo continued into
the house and told his mother to tell people that he wasn't home. 

 Police found a spent sixteen gauge shotgun shell and broken
pieces of a sixteen gauge shotgun in the alley. Police measured a
distance of 128 feet from the place where they found a shotgun shell to
the end of the alley where Elizondo says Ortega was.

The Jury Charge

 Appellant contends on appeal that the trial court erred in including
a "provoking the difficulty" instruction in the jury charge and in refusing
to charge the jury on the lesser included offense of voluntary
manslaughter. Texas law provides:

 [I]f the defendant provoked another to make an attack on
him, so that the defendant would have a pretext for killing
the other under the guise of self-defense, the defendant
forfeits his right of self-defense.

 

Smith v. State, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998); see also
Tex. Pen. Code. Ann. § 9.31(b)(4) (Vernon Supp. 2000). An instruction
to the jury on "provoking the difficulty" is required when there is
sufficient evidence for a jury to find beyond a reasonable doubt that (1)
the defendant did some act or used some words which provoked the
attack on him, (2) such act or words were reasonably calculated to
provoke the attack, and (3) the act was done or the words were used
for the purpose and with the intent that the defendant would have a
pretext for inflicting harm upon the other. Smith, 965 S.W.2d at 513-14. 

 A defendant's intentions are generally concealed within his own
mind and can only be determined from his words, acts, and conduct. 
Id. at 518 (citing Norwood v. State, 120 S.W.2d 806, 809 (Tex. Crim.
App. 1938)). The matter of provoking a difficulty necessarily implies a
certain craftiness and design, and whether such design exists in any
given case is a matter for the jury. Smith, 965 S.W.2d at 518.

 In this case, Elizondo challenges the evidence supporting the third
requirement for a charge on provoking the difficulty, arguing, "While
there had been a fight between appellant and the deceased, there was
no evidence that the appellant started the fight as a pretext or an
excuse to shoot the deceased." We agree. However, the evidence
could support an inference that Elizondo pursued Ortega to the alley
intending to challenge him, and, in that manner, develop a pretext for
inflicting violence against Ortega under the guise of self-defense. 
Elizondo testified that he retrieved the gun and went back to confront
Ortega because he wanted to "scare" him. The evidence would support
an inference that Elizondo's real motivation for retrieving the gun was
to provoke Ortega. Therefore, we conclude that the trial court acted
properly in instructing the jury on the doctrine of "provoking the
difficulty" and overrule Elizondo's first point of error.

 Elizondo also complains of the trial judge's refusal to charge the
jury on voluntary manslaughter as a lesser included offense of murder.(2) 
The State counters that Elizondo failed to properly preserve error on this
point, and, even if he had preserved error, he was not entitled to an
instruction on voluntary manslaughter. 

 The State also argues that Elizondo failed to preserve this point for
review by failing to present the contents of the voluntary manslaughter
instruction he wanted in writing or to dictate the desired instruction into
the record. We do not agree that this was required. Appellant did
object to the absence of a charge on voluntary manslaughter and asked
for an instruction on voluntary manslaughter, but did not state the
wording of the charge he desired.(3) To preserve error, the defendant
need only make an objection sufficient to apprise the trial judge of the
desired instruction omitted from the charge. Chapman v. State, 921
S.W.2d 694, 695 (Tex. Crim. App. 1996). It is not necessary for
appellant to submit in writing a specially requested jury instruction to
apprise the trial court of the charge he wants or to dictate the desired
charge into the record to preserve error. Belyeu v. State, 791 S.W.2d
66, 72 (Tex. Crim. App. 1989) (citing Tex. Code Crim. Proc. Ann. art.
36.14). Article 36.14 specifically provides that "in no event shall it be
necessary for the defendant or his counsel to present special requested
charges to preserve or maintain any error assigned to the charge." Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2000). Having found
that appellant properly preserved error on the trial court's failure to
include a charge on voluntary manslaughter, we proceed to determine
whether this exclusion was error. A two-part analysis is used in
determining whether a charge on a lesser included offense is
appropriate. First, the lesser included offense must be included within
the proof necessary to establish the offense charged, and, second, some
evidence must exist in the record that would permit a jury rationally to
find that if the defendant is guilty, he is guilty only of the lesser offense. 
Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).

 The Court of Criminal Appeals has held that voluntary
manslaughter is a lesser included offense of murder. Moore v. State,
969 S.W.2d 4, 9 (Tex. Crim. App. 1998). We must determine, therefore,
whether there is some evidence in the record that if the defendant is
guilty, he is guilty of only the lesser offense. We hold that there is not. 
Under the law in effect for this case, an offense that would otherwise
be murder is reduced to "voluntary manslaughter" if the actor caused
the victim's death "under the immediate influence of sudden passion
arising from an adequate cause." Act of June 14, 1973, 63rd Leg., R.S.,
ch. 399, § 19.03, 1973 Tex. Gen. Laws 883, 913; repealed by Act of
June 19, 1993, 73rd Leg., R.S., ch. 900, §1.01, 1993 Tex. Gen. Laws
3589, 3617. Elizondo never testified to any passionate emotional state
such as anger or excitement. Instead, Elizondo maintained that he shot
Ortega only because he was forced to do so in self-defense. There were
no other witnesses available who could provide evidence of sudden
passion. We hold that the trial court did not err in refusing to charge
the jury on voluntary manslaughter.

 Elizondo also argues that the trial court erred in failing to give a
"right to arm" instruction. The State counters that the self-defense
instruction given by the trial court was sufficient so that a "right to
arm" instruction was unnecessary and no harm resulted from the trial
court's refusal of Elizondo's requested instruction. 

 The charge of the court shall include "the law applicable to the
case." Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 1981). Elizondo
relies on Williams v. State, 580 S.W.2d 361 (Tex. Crim. App. 1979) for
the principle that where, as here, the trial court instructs the jury on
"provoking the difficulty," that instruction should be accompanied by a
"right to arm" instruction. However, even assuming that the jury
should have been given a "right to arm" instruction in this case, we
hold that this was not reversible error.

 Williams states that the rule requiring a "right to arm"
instruction as a companion to a "provoking the difficulty" instruction is
"well settled," and cites a number of cases as authority. Consulting
those cases uncovers similar comments. See, e.g., Porter v. State, 215
S.W.2d 889, 891 (Tex. Crim. App. 1948) ("well settled"); Dunne v.
State, 278 S.W. 201, 201 (Tex. Crim. App. 1925) ("long standing rule");
Clark v. State, 268 S.W. 465, 466 (Tex. Crim. App. 1925) ("rule long
prevailing"). None of these cases rely on any constitutional provision
or principle. Because the alleged error in failing to give a "right to arm"
instruction does not implicate any constitutional rights, our review is
prescribed by the Court of Criminal Appeals' opinion in Almanza v.
State, 686 S.W.2d 157 (Tex. Crim. App. 1984), and article 36.19 of the
Texas Code of Criminal Procedure. Barrera v. State, 982 S.W.2d 415,
4167 (Tex. Crim. App. 1998). Article 36.19 provides, in relevant part: 

 Whenever it appears by the record in any criminal action
upon appeal that

 any requirement of Articles 36.14, 36.15, 36.16, 36.17 and
36.18 has been disregarded, the judgment shall not be
reversed unless the error appearing from the record was
calculated to injure the rights of defendant, or unless it
appears from the record that the defendant has not had a fair
and impartial trial. . . .

 

Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981).

 When an appellant objects to error in the charge, he is entitled to
a reversal if he can show some harm. Dickey v. State, 1999 Tex. Crim.
App. LEXIS 138 at *3 (Tex. Crim. App. December 15, 1999), citing
Almanza, 686 S.W.2d at 171. The "some harm" standard means any
harm, regardless of degree. Dickey, 1999 Tex. Crim. App. LEXIS 138 at
*3-4, citing Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App.
1986).

 In this case, the self-defense instruction given to the jury covered
much of the same ground as the "right to arm" instruction sought by
Elizondo. The self-defense instruction informed the jury:

 When a person is attacked with unlawful deadly force, or he
reasonably believes he is under attack or attempted attack
with unlawful deadly force by one or more person, and there
is created in the mind of such person a reasonable
expectation of fear of death or serious bodily injury at the
hands of such assailants, then the law excuses or justifies
such person in resorting to deadly force by any means at his
command to the degree that he reasonably believes
immediately necessary, viewed from his standpoint at the
time, to protect himself from such attack or attempted
attack. It is not necessary that there be an actual attack or
attempted attack, as a person has a right to defend his life
and person from apparent danger as fully and to the same
extent as he would had the danger been real, provided that
he acted upon a reasonable apprehension of danger, as it
appeared to him from his standpoint at the time, and that he
reasonably believed such force was immediately necessary
to protect himself against the other person's use or
attempted use of unlawful deadly force by his assailants.

 

In requesting a "right to arm" instruction, Elizondo's attorney said: 

 I think that this jury charge should contain a right to arm
instruction, which it does not have, something to the effect
that: You're instructed further in connection with the law of
self-defense that if you find from the evidence that shortly
prior to the killing of the defendant - the killing, excuse me,
the defendant reasonably apprehended an attack upon the
person by the deceased, and the fact that the defendant
armed himself with a gun would in no way impair or lessen
his right of self-defense because he would have a right to so
arm himself if he reasonably feared such and attack.

 

 I believe that there should be something like that in the jury
charge, and nothing like that is contained therein.

 

 The right to use deadly force implies the right to have deadly force
at hand. Therefore, the "right to arm" instruction sought by Elizondo
would have added little to the instructions already before the jury. 
Elizondo also faults the jury charge for failing to instruct the jury that he
had the right to arm himself in advance against a "reasonably
apprehended attack." Yet there is no evidence that Elizondo
"reasonably apprehended an attack." Elizondo testified that he retrieved
the shotgun to "scare" Ortega, but when Ortega appeared to be gone,
he went to the back gate only to close it, not expecting to find Ortega
in the alley. Elizondo did not testify that he expected Ortega to attack
him, or that he anticipated needing the weapon for self-defense. We
conclude that no harm resulted from the trial court's failure to give the
"right to arm" instruction sought by Elizondo, and, therefore, overrule
Elizondo's third point of error. 

Right to a Speedy Trial

 In his fifth point of error Elizondo argues that he was denied his
Sixth Amendment right to a speedy trial. Courts must analyze
constitutional speedy trial claims "on an ad hoc basis" by weighing and
then balancing four factors: (1) length of the delay, (2) reason for the
delay, (3) assertion of the right, and (4) prejudice to the accused. Barker
v. Wingo, 407 U.S. 514, 530-32. None of these individual factors are
a "necessary or sufficient condition to the finding" of a speedy trial
violation. Barker, 407 U.S. at 533. These related factors "must be
considered together with such other circumstances as may be relevant." 
Id. 

 The primary burden for assuring cases are promptly brought to
trial lies with prosecutors and the courts. Id. at 530. The defendant
has the initial burden of showing sufficient delay has occurred to
require application of the Barker balancing test. Moreno v. State, 987
S.W.2d 195, 198 (Tex. App.--Corpus Christi 1999, pet. ref'd). Upon
such a showing, the burden shifts to the State to justify the delay; the
defendant then has the burden of showing his diligent assertion of the
right to a speedy trial and prejudice resulting from the delay. Id. 

 The first step in conducting a speedy trial review is to establish the
facts surrounding the bringing of the case to trial (i.e., date the
defendant was arrested or charged; date the defendant was tried; the
State's excuse for the delay; the defendant's actions in asserting his
right; whether evidence or witnesses have been lost; whether the
defendant has suffered emotionally from the wait). State v. Flores, 951
S.W.2d 134, 138 (Tex.App.--Corpus Christi 1997, no pet.). We conduct
our review of these factual determinations under an "abuse of
discretion" standard with due deference to the trial court's findings. 
State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Flores,
951 S.W.2d at 139-40. Once the facts have been established, we
undertake a de novo review of the trial application of the Barker
balancing test to those facts. Id.

 We first consider the length of the delay in bringing this case to
trial. More than four years passed between Elizondo's arrest and his
trial. The trial court found, the State concedes, and we agree, that this
was an excessive delay which must be weighed against the State. 

 Next we must consider the reasons for the delay. Elizondo was
arrested in June 1994. On October 10, 1994 the case was called for
trial, but was postponed because Elizondo needed more time to
prepare. The record reflects several more delays through the end of
1994, all of 1995, and up until March 1996, when the defendant did not
appear and a judgment nisi was issued. The record does not contain
any explanation for these delays. Delays continued until August 1997,
when Elizondo was arrested by federal authorities. In January 1998 the
State filed a petition for a writ of habeas corpus to have Elizondo
brought back to state custody for trial, and he was delivered to Hidalgo
County authorities in July 1998. Trial began in September 1998.

 The trial court, in its conclusions of law, held that delays
attributable to Elizondo meant that valid reasons for the delay existed. 
This legal conclusion is subject to de novo review, Munoz, 991 S.W.2d
at 821, and we do not agree with it. Although Elizondo apparently did
request one delay, that delay accounts for only a few months of the
more than four years between arrest and trial. The State argues that
the period when the case was delayed due to the judgment nisi and
while Elizondo was in federal custody must also be counted as delays
attributable to Elizondo's own conduct. However, even if these delays
are counted against Elizondo, a delay of approximately three years
remains unaccounted for. 

 It is the State's burden to account for the delay. Melendez v.
State, 929 S.W.2d 595, 598 (Tex. App.--Corpus Christi 1996, no pet.). 
If the record is silent or contains insufficient reasons to excuse the
delay, we must presume that no valid reason for the delay existed. 
Turner v. State, 545 S.W.2d 133, 137 (Tex. Crim. App. 1976). In this
case, the State failed to carry its burden of accounting for three years
worth of delay. The record is silent on why these delays occurred. 
Under these circumstances, the "reason for the delay" factor must be
weighed against the State.

 The next factor is the degree to which the defendant asserted his
right to a speedy trial. A defendant has no duty to bring himself to trial,
and the primary burden of insuring that cases are brought to trial rests
on the courts and prosecution. Barker, 407 U.S. at 527. The defendant,
however, has the burden of showing a diligent assertion of the right to
a speedy trial, Melendez, 929 S.W.2d at 599; and the accused's lack of
a timely demand for a speedy trial indicates strongly that he did not
really want a speedy trial. Harris v. State, 827 S.W.2d 949, 957 (Tex.
Crim. App. 1992).

 Elizondo testified that he and a fellow inmate in federal prison
were preparing a motion to dismiss for violation of the right to a speedy
trial while Elizondo was in federal custody in 1998, but that he was
transferred to state custody before the motion was finished. In August
1998 Elizondo's attorney filed a motion to dismiss for violation of the
right to a speedy trial. In September 1998 the trial court denied this
motion and trial commenced. 

 In its findings and conclusions, the trial court made the finding
that "the record is devoid of any reference to the Defendant having filed
a motion to dismiss for failure to provide a speedy trial." However,
Elizondo filed a motion to dismiss on August 12, 1998. Although the
trial court's findings of fact are entitled to deference, the trial court was
without discretion to disregard Elizondo's motion. In its conclusions of
law, the trial court acknowledges that Elizondo did invoke his right to
a speedy trial, but erroneously recites that Elizondo did not invoke this
right until September 28, 1998, "the date of trial." The trial court made
the legal conclusion that this factor "should be weighed substantially
against the defendant." 

 While we agree that Elizondo's wait of over four years to assert his
speedy trial right means that this factor does not weigh heavily in his
favor, we cannot agree that this factor should be weighed heavily
against him, either. Elizondo did eventually file a motion asserting his
speedy trial right, and it is not his responsibility to ensure that the trial
against him commences. Barker, 407 U.S. at 527. We conclude that
this factor should be weighed neutrally, neither favoring the State nor
Elizondo. 

 Finally, we consider whether Elizondo has shown that he has
been prejudiced by the delay. This factor is to be assessed in light of
three interests the speedy trial right was designed to protect: (1)
preventing oppressive pretrial incarceration; (2) minimizing the anxiety
and concern of the accused; and (3) limiting the possibility that the
defense will be impaired. Id. at 532. In this case, Elizondo was
released on bail approximately one week after his arrest. Although he
was in custody immediately prior to his trial, that custody was a result
of a federal conviction against Elizondo, and not attributable to this
case. Therefore, the pretrial incarceration in this case was not
oppressive. 

 Elizondo offered no testimony regarding his anxiety and concern
prior to his trial. Elizondo did testify regarding impairment of his
defense. He testified that three witnesses he wanted to have at trial
had become unavailable. One was a woman named Amanda, who
Elizondo said was Ortega's ex-girlfriend, who would testify that Ortega
was "a violent guy, somebody that could hurt another person." He
testified that, shortly after Ortega's death, Amanda was willing to make
this testimony, but, by the time of trial she had moved away and
Elizondo did not know where to find her. Another potential witness,
Manuel Rivera, would testify that Ortega had a gun with him on the day
he was killed. Elizondo testified that he and his family had been unable
to locate Rivera. Gabino Bravo, who was with Elizondo and Ortega on
the day Ortega was killed, was going to testify "to portions of what
happened that day." Elizondo said that another witness, George
Gonzalez, "doesn't want to come testify no more since it's been so
long."

 To show prejudice resulting from the unavailability of witnesses,
a defendant must show that (1) the witnesses are unavailable, (2) their
testimony might be material and relevant to his case, and (3) he
exercised due diligence in his attempt to find them and produce them
for trial. Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). 
Elizondo's testimony established that the witnesses were unavailable. 
The State contends, however, that Elizondo failed to show that their
testimony would be material. Elizondo did not say what George
Gonzalez's testimony would be, and he described Gabino Bravo's
testimony in such vague terms that he failed to establish that Bravo's
testimony would be material. The State argues that Amanda's
anticipated testimony that Ortega was a violent person and that
Rivera's anticipated testimony that Ortega had a gun on the day he was
killed would be merely cumulative of Elizondo's own testimony. 
However, the significance of witnesses who could reiterate Elizondo's
testimony should not be understated. Elizondo's credibility was a
crucial issue in this case. If the jury believed all of Elizondo's testimony,
then it would have had no choice but to acquit Elizondo on the ground
that he killed Ortega in self-defense. The issues of whether Ortega
threatened Elizondo, and whether he was armed, were material issues,
and the testimony of Amanda and Miguel Rivera might have been
relevant to those issues.

 However, Elizondo failed to prove that he exercised due diligence
in attempting to find and produce these witnesses for trial. Although
Elizondo testified that he had been unable to locate these witnesses, he
offered no testimony whatsoever regarding what he or anyone else had
done to try to find these witnesses. Without any such evidence, he has
failed to prove that the witnesses truly were unavailable, and, therefore,
has failed to prove prejudice resulting from their unavailability. 
Therefore, Elizondo has failed to show prejudice resulting from the delay
in his trial, and this factor weighs against his speedy trial claim.

 The "prejudice" factor of the Barker test has been called the
"crucial" factor, Munoz, 991 S.W.2d at 404, and the "most important." 
Phillips v. State, 650 S.W.2d 396, 404 (Tex. Crim. App. 1983, op. on
rehearing); State v. Tellez, 976 S.W.2d 333, 335 (Tex. App.--Corpus
Christi 1998, no pet.) Because Elizondo failed to show prejudice, and
made only a weak showing that he asserted his speedy trial right, we
hold that Elizondo was not entitled to have the case against him
dismissed for violation of his right to a speedy trial. Elizondo's fifth
point of error is overruled.

Admissibility of Elizondo's Statements

 In his next two points of error, Elizondo argues that the trial court
erred in denying his motion to suppress two written statements
Elizondo gave to police. Elizondo argues that although he was in
custody when he gave the first statement, the requirements of article
38.22 of the Texas Code of Criminal Procedure for custodial statements
were not met. He also argues that the first statement was not given
freely and voluntarily, and that the second statement was tainted by the
illegality of the first. The State argues that Elizondo was not in custody
when the first statement was taken.

 We review the trial court's findings in a suppression hearing under
an abuse of discretion analysis. Stone v. State, 583 S.W.2d 410, 413
(Tex. Crim. App. 1979). The trial judge is the sole judge of the
credibility of witnesses at a suppression hearing, and may believe or
disbelieve all or any part of the testimony of any witness. Gentry v.
State, 770 S.W.2d 780, 790 (Tex. Crim. App. 1988).

 A person is in custody only if, under the circumstances, a
reasonable person would believe that his freedom of movement was
restrained to the degree associated with a formal arrest. Dowthitt v.
State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury
v. California, 511 U.S. 318, 324 (1994)). The reasonable person
standard presupposes the perspective of an innocent person. Id. (citing
Florida v. Bostick, 501 U.S. 429, 438 (1991)).

 In this case, a police officer had repeatedly gone to Elizondo's
mother and told her that Elizondo "had to" go to the police station. 
Elizondo then went to the police station by himself. Elizondo was read
his Miranda rights, and told that he was a suspect. Elizondo gave a
statement that he had been inside his house when he saw three gang
members shoot Ortega. He later testified that he thought he had no
choice but to go to the police station, and that he "thought he was
going to get arrested." Although no one ever told him that he was
required to stay, he testified that he did not feel free to leave, and he
was surprised when he was allowed to leave. 

 Persons who voluntarily accompany investigating officers to a
certain location and who know or should know that the officers suspect
them of having committed a crime are not considered "in custody." 
Livingston v. State, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987). The
act is considered voluntary when the circumstances show that the
person acts upon the request, urging, or invitation of the police officers
rather than upon the use of force, coercion, or threat. Lookingbill v.
State, 855 S.W.2d 66, 78 (Tex. App.--Corpus Christi 1993, pet. ref'd). 
In this case Elizondo's testimony, even if believed by the trial court, did
not provide such strong evidence of "force, coercion, or threat" that the
trial court was without discretion to hold that Elizondo was not in
custody. Elizondo's sixth and seventh points of error are overruled.

Exclusion and Admission of Evidence 

 In his fourth point of error, Elizondo argues that the punishment-phase testimony of Border Patrol Agent Chris Cameron regarding a
previous criminal offense involving Elizondo should not have been
admitted. Cameron testified that he was working at an internal border
patrol checkpoint when he discovered 269 pounds of cocaine in a
"transportation van."(4) Elizondo was one of six people in the van. 
Cameron testified that, at the time he was searching the van and
questioning its occupants, there was no evidence that the cocaine
belonged to Elizondo. Cameron added that, although Elizondo was
initially detained, he was released after further investigation. Later, the
trial judge instructed the jury to disregard Cameron's testimony.

 The general rule is that error in asking an improper question or in
admitting improper testimony is cured or made harmless by a
withdrawal of the evidence or an instruction to disregard. Mendiola v.
State, 924 S.W.2d 157, 165 (Tex. App.--Corpus Christi 1995, pet. ref'd,
untimely filed). This rule controls except in extreme cases where it
appears that the question or evidence is clearly calculated to inflame the
minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression created in their minds. 
Boyde v. State, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974); Mendiola,
924 S.W.2d at 165. This rule applies to evidence about extraneous
offenses. Campos v. State, 589 S.W.2d 424, 428 (Tex. Crim. App.
1979); Mendiola, 924 S.W.2d at 165.

 Cameron's testimony did little to show Elizondo was responsible
for the cocaine Cameron found in the van. His testimony was not of
such a character as to suggest the impossibility of the judge's
instruction to disregard withdrawing the impression created in the
jurors' minds. We overrule Elizondo's fourth point of error.

 Elizondo sought to introduce evidence that Ortega had tattoos that
included a skull with a spider web and the word "slayer." Elizondo
sought to introduce these tattoos as evidence that Ortega was a violent
person who may have been a gang member. The State objected that
the tattoos were not "good evidence of whether he's a violent person
or whether or not he was the aggressor." We understand this as an
objection to the relevance of the evidence. See Tex. R. Evid. 402. 

 Even assuming that the exclusion of the tattoos was error, it was
not reversible error. Generally, errors in criminal cases are subject to
the harmless error standard found in Texas Rule of Appellate Procedure
44.2. Under that rule, only certain federal constitutional errors labeled
by the United States Supreme Court as "structural" are categorically
immune to reversible error analysis. Salinas v. State, 980 S.W.2d 219,
219 (Tex. Crim. App. 1998) (citing Cain v. State, 947 S.W.2d 262, 264
(Tex. Crim. App. 1997)). Other constitutional errors require reversal of
the trial court's judgment unless the court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment. Tex. R. App. P. 44.2(a). Non-constitutional errors require
reversal of the trial court's judgment only if the error affects a
substantial right of the defendant. Tex. R. App. P. 44.2(b). A substantial
right is affected when the error had a substantial and injurious affect or
influence in determining the jury's verdict." King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328
U.S. 750, 776 (1946)).

 Because the alleged error in excluding this evidence is not a of a
constitutional dimension, Elizondo would have to show that the error
had a "substantial and injurious affect or influence in determining the
jury's verdict" to warrant reversal. King, 953 S.W.2d at 271. Elizondo
himself testified that Ortega was a violent person. While evidence of
tattoos may have bolstered this testimony somewhat, whether Ortega
was a violent person or not was a peripheral issue in the case. Whether
Ortega was a violent person was just one factor influencing the jury's
determination of whether to believe Elizondo's version of the killing. We
hold that excluding this evidence did not have a "substantial" effect on
the case, and, therefore, any error does not warrant reversal. Elizondo's
eighth point of error is overruled.

 In his next point of error, Elizondo complains of the trial court's
admission of evidence over his objections that the evidence was
hearsay. In each instance, we conclude that the admitted evidence was
so inconsequential that any error does not warrant reversal.

 Elizondo first complains that the State presented hearsay evidence
that Ortega's body was transported to the hospital. Elizondo fails to
explain how this evidence had a substantial and injurious effect on the
jury's verdict. The jury likely inferred from the evidence that Ortega
suffered a gunshot wound and that an autopsy was performed that his
body had been taken to a hospital. 

 Next, Elizondo complains of hearsay evidence that Ortega had told
his mother he was going to a party at the invitation of Elizondo. 
Elizondo admitted that he and Ortega were together throughout the
day, and that he had shot Ortega. Not only was this testimony from
Ortega's mother not harmful to Elizondo, it marginally benefitted his
case by lending some support to Elizondo's testimony that he had been
with Ortega earlier in the day and thereby knew that Ortega had a gun
with him.

 Finally, Elizondo also complains of hearsay testimony during the
punishment phase that Ortega was "found lying in his own blood." 
Here as well, the jury likely inferred that Ortega was found lying in his
blood from other evidence that Ortega had been killed by a shotgun
blast. Elizondo's objection was confined to hearsay, and did not include
any objection that the phrase "lying in his own blood" was
inflammatory or unfairly prejudicial. We conclude that, even if Elizondo
is correct in each instance that the complained-of evidence was
hearsay, in none of these instances did the error have a sufficient effect
on the jury's verdict to warrant reversal. Elizondo's ninth point of error
is overruled.

 Having overruled all of Elizondo's points of error, we affirm the
judgment of the trial court. 

 MELCHOR CHAVEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed this

the 8th day of June, 2000.

 







1. This phrase was not translated.
2. The treatment of "sudden passion arising from adequate cause"
in homicide cases has changed since the date of the events giving rise
to this case. Under present Texas law, voluntary manslaughter is no
longer a separate offense from murder. Rather, the issue of sudden
passion arising from adequate cause may be considered during the
punishment phase following a murder conviction. Tex. Code Crim. Proc.
Ann. art. 19.02(d) (Vernon 1994). If the defendant proves this issue, the
offense is reduced from a first degree to a second degree felony. Id.
3. The following discussion was held regarding appellant's
objection:


 Appellant: The first thing we believe is that the charge
should include a charge on voluntary manslaughter at the
time the offense was committed; we had voluntary
manslaughter -- we believe that it's been raised by the
evidence, and for that reason that it should be included as
part of the court's charge.


 [State's response omitted]


 Trial judge: First, then, its an objection that it's not in there,
that's overruled; specific requests that it be included?


 Appellant: Yes, sir.


 Trial judge: That is denied. 
4. The prosecutor referred to this vehicle as a "bus."