In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00231-CR


______________________________




JAMES RENE HAYES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20312




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 About 3:00 a.m. December 24, 2002, Paris police officer Doug Murphy, who was on patrol
in a residential neighborhood, noticed a vehicle in a driveway, with Greg Mallory leaning in talking
to James Rene Hayes, who sat in the vehicle. Because there had been recent vehicle and residence
burglaries in the area, Murphy stopped to investigate. Mallory and Hayes said they had just dropped
off a woman at the residence but weren't sure of her name; Hayes thought her name was Vicki.
Murphy went to the door of the house in front of which Hayes' vehicle was parked. A man answered
the door and told Murphy that he thought a woman had just been dropped off. The woman was
summoned to the door, confirmed that she had just been dropped off by Hayes, and added that Hayes
was her "man." Confronting Mallory and Hayes with the inconsistency in how well they knew the
woman, Murphy asked to search their persons. Both men consented. On Hayes' person was found
around $1,200 in cash. Murphy testified that Hayes told him that was "gas money," which Murphy
thought was far more than was needed to purchase gas for the 100-mile trip Hayes had said was
planned. However, on the DVD recorded on the patrol car camera, Hayes seems to also say
something about using the money for Christmas presents. Murphy requested, and received, Hayes'
consent to search the vehicle. When Murphy looked in the car, he found an eyeglass holder
containing several rocks of crack cocaine.

 In a single three-day trial involving this charge and two others occurring at different times,
Hayes was convicted of three charges of possession of a controlled substance, cocaine, of four or
more grams but less than 200 grams. (1) See Tex. Health & Safety Code Ann. § 481.115(d)
(Vernon 2003). He has filed a consolidated appeal attacking all three convictions. Each case
involved a separate offense date, and some of Hayes' appellate issues are case specific. We affirm
each conviction and sentence on this date. (2) We affirm the trial court's judgment in this case because
(1) the fruit of the search was properly admitted, (2) Hayes has not established that his trial counsel
was ineffective, (3) Hayes' complaint about allegedly expert testimony was not preserved, and
(4) Hayes' due-process point of error is multifarious and inadequately briefed.

(1) The Fruit of the Search Was Properly Admitted

 Hayes claims the search in the early morning hours of December 24, 2002, was
unconstitutional; if this is the case, the crack cocaine and money seized as part of the search should
have been suppressed. Hayes claims that the officer had satisfied all his questions earlier and was,
at the time of the search, on an "unauthorized fishing expedition." 

 There is a video record of the incident, showing Murphy talking to Hayes and Mallory at the
car, and including audio of Murphy talking to the two people inside the house. Hayes claims that
the second police car at the scene blocked Hayes in the driveway and created a situation where a
reasonable person would not have felt free to leave. Hayes says that Murphy presented no articulable
facts to support his investigative detention and questioning of Hayes and Mallory.

 An investigative detention must be founded on specific, articulable facts amounting to more
than a mere hunch or suspicion that, combined with the officer's personal experience and knowledge
and any logical inferences, create a reasonable suspicion that criminal activity is occurring. See
Amores v. State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991); Garza v. State, 771 S.W.2d 549, 558
(Tex. Crim. App. 1989); Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). We review
the trial court's ruling on a motion to suppress using an abuse-of-discretion standard. Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Freeman v. State, 62 S.W.3d 883 (Tex.
App.--Texarkana 2001, pet. ref'd). In a suppression hearing, the trial court is the sole trier of fact
and judge of the witnesses' credibility and the weight to be given their testimony. The evidence
should be viewed in the light most favorable to the trial court's ruling. State v. Ballard, 987 S.W.2d
889, 891 (Tex. Crim. App. 1999); Freeman, 62 S.W.3d at 886. We should afford almost total
deference to the trial court's determination of historical facts that the record supports, especially
when the fact-findings are based on an evaluation of the witnesses' credibility and demeanor. State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Freeman, 62 S.W.3d at 886.

 Murphy said his initial investigation was a result of the early morning hour and a recent spate
of burglaries in the area. As he received inconsistent stories from Mallory, Hayes, and the woman
at the residence, he had further articulable reasons to continue investigating. The articulable facts
used by the officer must create some reasonable suspicion that some activity out of the ordinary is
occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and
some indication the unusual activity is related to crime. Myers v. State, 203 S.W.3d 873, 882 (Tex.
App.--Eastland 2006, pet. ref'd). A reasonable suspicion determination is made by considering the
totality of the circumstances. Ford v. State, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005);
Maysonet v. State, 91 S.W.3d 365, 372 (Tex. App.--Texarkana 2002, pet. ref'd). We note that
Hayes consented to the searches of his person and then of the vehicle. (3) About ten minutes elapsed
from the onset of the encounter to the time at which Murphy asked to search the two men's persons;
no more than eighteen minutes elapsed between Murphy's first contact with the men and finding the
cocaine.

 Based on our review of the record, including the video exhibit of the encounter, we cannot
say, considering the totality of the circumstances, that the trial court abused its discretion in finding
that Murphy had the requisite reasonable suspicion to investigate the situation. (4)

(2) Hayes Has Not Established That His Trial Counsel Was Ineffective

 Hayes complains that his counsel, who represented Hayes both at trial and on appeal, was
constitutionally ineffective for failing to request a hearing on the various officers' qualifications to
offer expert testimony. We overrule this point of error. 

 Claims that counsel provided ineffective assistance are evaluated under the Strickland
two-part test requiring a showing of both deficient performance and prejudice. See Strickland v.
Washington, 466 U.S. 668, 689 (1984). A Strickland claim must be "firmly founded in the record"
and "the record must affirmatively demonstrate" the meritorious nature of the claim. Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).

 Direct appeal is usually an inadequate vehicle for raising such a claim because the record is
generally undeveloped for the object of litigating or preserving the claim and thus often incomplete
or inadequate for this purpose. (5) See Goodspeed, 187 S.W.3d at 392; Freeman v. State, 125 S.W.3d
505, 506 (Tex. Crim. App. 2003); Fuller v. State, 224 S.W.3d 823, 828-29 (Tex. App.--Texarkana
2007, no pet.). This is true with regard to the question of deficient performance. We review
counsel's conduct with great deference, without the distorting effects of hindsight, especially where
counsel's reasons for failing to do something do not appear in the record. Thompson, 9 S.W.3d at
813. The Texas Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions" before a court finds that he or she rendered ineffective
assistance. See Goodspeed, 187 S.W.3d at 392 n.14 (quoting Rylander v. State, 101 S.W.3d 107,
111 (Tex. Crim. App. 2003)); Fox v. State, 175 S.W.3d 475, 485 (Tex. App.--Texarkana 2005, pet.
ref'd).

 As it applies to the conduct in the instant offense, Hayes' claim of ineffective counsel is based
on his assertion that law enforcement witnesses improperly gave expert opinions during their
testimony. Hayes claims that his trial counsel was obligated to request a hearing, outside the jury's
presence, on the admissibility of these opinions. See Tex. R. Evid. 705. Hayes complains that
Murphy, in his testimony about his encounter with Hayes, said Hayes had a large sum of cash, "The
majority, hundreds." The only testimony offered by Murphy which could be said to offer an opinion
was Murphy's statement that he was suspicious of Hayes' claim that the cash was "gas money" for
a "hundred mile trip." We fail to see how this statement, as interpreted by Hayes and argued in his
brief, amounts to an expert opinion. Counsel could not be deemed ineffective for failing to object
to this testimony, and any Strickland complaint necessarily fails. Cf. Ex parte Thompson, 179
S.W.3d 549, 559-60 (Tex. Crim. App. 2005) (defendant not entitled to jury charge on lesser-included offense; therefore, counsel not ineffective for failing to request); McFarland v. State, 845
S.W.2d 824, 846 (Tex. Crim. App. 1992) (not ineffective for attorney to fail to object to admissible
evidence).

 Any allegation of ineffectiveness must be firmly founded in, and affirmatively demonstrated
by, the record. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Failure to make
the required showing of either deficient performance of counsel or prejudice to defendant defeats the
ineffectiveness claim. Id. Absent those showings, an appellate court cannot conclude the conviction
resulted from a breakdown in the adversarial process that renders the result unreliable. Ex parte
Menchaca, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993). Appellant bears the burden of proving
by a preponderance of the evidence that counsel was ineffective. Thompson, 9 S.W.3d at 813. We
find that, under these circumstances, Hayes has not carried that burden.

(3) Hayes' Complaint About Allegedly Expert Testimony Was Not Preserved

 Hayes argues that Murphy was improperly allowed to testify that drug dealers carry $100
bills; actually Murphy said only that he was suspicious when he found that Hayes had approximately
$1,200 in mostly $100 denominations. Murphy said nothing about the cash making him suspicious
that Hayes was a drug dealer. Regardless of the import of Murphy's testimony, Hayes offered no
objection to this testimony. Therefore, he has not preserved this matter for our review. See Tex. R.
App. P. 33.1(a)(1)(A); Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). We overrule
this point of error.

(4) Hayes' Due-Process Point of Error Is Multifarious and Inadequately Briefed

 Hayes argues that numerous rulings by the trial court, in the aggregate, deprived him of due
process. As we explain in our opinion in the companion case, cause number 06-06-00230-CR, this
point of error is both multifarious and inadequately briefed, and is overruled for those reasons.

 We affirm the trial court's judgment.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 16, 2008

Date Decided: February 1, 2008


Do Not Publish

1. All three indictments allege possession with intent to deliver; the State abandoned the
delivery allegations.
2. Please see our opinions in cause numbers 06-06-00229-CR and 06-06-00230-CR , both
styled Hayes v. State, issued the same date as this opinion.
3. When consent to search is obtained, such a search may be conducted without a warrant. See
Minnesota v. Dickerson, 508 U.S. 366, 372 (1993); McGee v. State, 105 S.W.3d 609, 615 (Tex.
Crim. App. 2003).
4. We note that the jury was charged that it must find Hayes not guilty if it found that Murphy
did not have reasonable suspicion to detain Hayes before asking for consent to search the vehicle. 
See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).
5. A claim of ineffective assistance is better pursued by way of habeas corpus, with which there
is some opportunity for the record to have been developed regarding trial counsel's reasons for his
or her actions. See Goodspeed, 187 S.W.3d 390; Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex.
Crim. App. 2002).

Id. at
847. Accordingly, we cannot conclude, even after giving almost total deference to the trial court's
implied findings of fact, that the State's proffered reasons for the delay justifies the nearly five-year
delay. The second Barker factor weighs slightly in favor of a finding of a speedy trial violation.

 C. Failure to Assert Speedy Trial Right Weighs Against Finding Violation

 The third factor is concerned with the timeliness of a defendant's assertion of his right to a
speedy trial. See Barker, 407 U.S. at 529, 531-32; Zamorano, 84 S.W.3d at 648, 651-52. The
United States Supreme Court has explicitly rejected the demand-waiver rule which requires a
defendant to demand a speedy trial or the right is waived. Barker, 407 U.S. at 529-30. However,
the Court also noted that the failure to timely seek a speedy trial makes it difficult for a defendant
to prevail. Id. at 532. 

 Dokter did not assert his right to a speedy trial until he filed his motion to dismiss on
January 18, 2008. Thus, Dokter did not assert his right to a speedy trial for almost fifty-five months. 
The Texas Court of Criminal Appeals has noted a defendant's failure to make a timely demand for
a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not
having one. Dragoo, 96 S.W.3d at 314. The longer the delay--the more likely it is that a defendant
who really wanted a speedy trial would take some action to obtain one. Id. A defendant's lack of
a timely demand for a speedy trial indicates the defendant did not really want a speedy trial, and the
inaction weighs more heavily against a violation the longer the delay becomes. Id. Further, the
Texas Court of Criminal Appeals has held moving for "a dismissal instead of a speedy trial weakens
[a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." Zamorano,
84 S.W.3d at 651 n.40. 

 We note it is uncontested that the parties were in good-faith negotiations for a plea bargain. 
The former prosecutor stated in his affidavit that plea negotiations were engaged in with the defense
counsel, but did not result in a final resolution. The record, though, is rather vague concerning the
plea negotiations and their breakdown. Dokter testified that his fellow defendant, Puckett, told
Dokter that Puckett's attorney told Puckett the charges would be dismissed. This double hearsay
statement not only has serious reliability concerns, but also fails to establish that an agreement had
been reached. Nor does the record establish the period of time such negotiations were pending. The
mere fact that plea negotiations were pending during some undefined peroid does not make a
significant difference. Almost all cases involve some plea negotiation; that is just a part of the
normal trial procedure. If the record contained evidence that a plea agreement had been reached and
relied upon by Dokter, such evidence might ameliorate Dokter's inaction to a certain extent. (13) In the
absence of such evidence, the record fails to contain any excuse for Dokter's failure to timely assert
his right to a speedy trial. The third Barker factor weighs heavily against a finding of a speedy trial
violation.

 D. Evidence of Prejudice Is Judicial Determination

 The last factor requires this Court to determine whether there is evidence of prejudice to the
accused attributable to the State's delay. Barker, 407 U.S. at 531-32; Zamorano, 84 S.W.3d at 648,
652-54. Once a defendant makes a prima facie showing of prejudice, the State has the burden to
establish the accused suffered no serious prejudice. Munoz, 991 S.W.2d at 826; State v. Jones, 168
S.W.3d 339, 349 (Tex. App.--Dallas 2005, pet. ref'd). "Prejudice . . . should be assessed in the light
of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S.
at 532. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to
minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will
be impaired." Id. The last interest is the most important "because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system." Id. 

 Dokter testified that he was released from jail on bond approximately six weeks after his
arrest. (14) Because Dokter was not in custody for most of the delay, the first protectable interest is of
minimal importance. Since there was no evidence presented that Dokter experienced anxiety or
concern regarding the looming prosecution, we give no consideration to the second subfactor
mentioned above. Therefore, only the last (and most important) interest is of concern in this case. 

 E. Record Contains Minimal Particularized Prejudice

 A defendant has the burden to make some showing of "prejudice," although a showing of
"actual prejudice" is not required. Munoz, 991 S.W.2d at 826. In Barker, the United States Supreme
Court found that there was insufficient evidence the accused suffered any prejudice as a result of
Kentucky's five-year delay in prosecuting him, even though he was incarcerated for ten months
during that delay. Barker, 407 U.S. at 534. The Court held the minimal prejudice of "living for over
four years under a cloud of suspicion and anxiety" and spending ten months in jail was insufficient. 
Id. None of the witnesses were unavailable when the case finally came to trial and the trial transcript
indicated only two minor lapses in memory among the witnesses who testified. Id. Dokter claims
that the record in this case contains sufficient evidence of particularized prejudice because he was
unable to locate several witnesses and the witnesses who did testify had significant memory
problems.

 At the hearing on the motion to dismiss, Dokter testified that there were several material
witnesses which could not be located. Dokter testified, "A lot of the people that were actually there
that night were not local, they were in town working." Dokter and his attorney made a number of
attempts to locate those witnesses. When asked on cross-examination to name the witnesses which
Dokter could not locate, Dokter testified he did not bring the list he had prepared with him and was
unable to provide any names. On redirect, Dokter was more particular, indicating that the defense
had been unable to contact Waldon, Adami, and David Melcher. (15) Although the State had provided
telephone numbers for Adami and Melcher, the State had not provided addresses, and the defense
had not been able to contact either witness. Because two of the three witnesses Dokter identified as
missing actually testified at trial, the record only contains evidence of one witness, Melcher, who
was unavailable. However, Dokter failed to provide any evidence regarding what he expected
Melcher's testimony would have been. To establish particularized prejudice based on an unavailable
witness, a defendant must present proof both of the efforts made to locate the witness and that the
witness would have benefitted his defense. See Phipps v. State, 630 S.W.2d 942, 947 (Tex. Crim.
App. [Panel Op.] 1982); Mabra v. State, 997 S.W.2d 770, 780 (Tex. App.--Amarillo 1999, pet.
ref'd); Clarke v. State, 928 S.W.2d 709, 716 (Tex. App.--Fort Worth 1996, pet. ref'd). Dokter failed
to establish particularized prejudice at the hearing on his motion to dismiss.

 Dokter argues the record of the trial demonstrates that most of the witnesses who did testify
suffered from lapses of memory and conflicting versions of the events. The record confirms that
Wheeler carried his police statement with him to the stand. A number of the witnesses, in trying to
recall specifics of the incident, made reference to the fact that the fight occurred five years ago. The
only witnesses not clearly associated with either the victim or Dokter were the bouncer and the
bartender. Both of these witnesses admitted to having trouble remembering. Goodwin, the
bartender, admitted there were parts of the event which she would not have recalled without referring
to the statement she gave to the police at a time closer to the incident. Waldon, the bouncer, testified
that he could not remember the precipitating cause of the original dispute between Driscoll and
Dokter. When asked if he remembered a rumor about Dokter having struck his girlfriend, Waldon
testified he did not remember. 

 Dokter also argues that several of the witnesses testified differently from statements they had
given previously, at a time closer to the time of the bar fight. The record confirms that at least two
witnesses' testimony differed from their prior statements to the police. Adami testified at trial that
he had struck Puckett after he saw Puckett hit Driscoll with a pool cue and that Puckett tripped over
Driscoll and fell to the ground near Driscoll. On cross-examination, Adami admitted that the
statement he provided to the police made no mention of a pool cue and that he had previously told
police that Puckett fell on top of Driscoll, not beside him. Detective David Cheatum testified that
Adami's statement to the police made no reference to a pool cue. Whereas Waldon testified at trial
that Dokter did not hit Driscoll while Driscoll was on the floor, Waldon had previously claimed that
Dokter hit Driscoll while Driscoll was on the floor. 

 Overall, however, the trial testimony does not demonstrate that most of the witnesses had
significant memory problems. Several of the witnesses denied having any memory problems. 
Wheeler, despite carrying his statement to the stand with him, testified he remembered the events
clearly. Johnson and Thomas McGonijl also testified that they remembered the events clearly. 

 While there is some evidence of prejudice in this case, the evidence is rather minimal. 
Witnesses often testify differently than their police statements and the use of prior police statements
to refresh memories is not out of the ordinary. The evidence in this case merely creates a suspicion
of prejudice, a suspicion which was not developed sufficiently to establish a prima facie case of
particularized prejudice.

 F. Role of Acquiescence in Delay

 Even if there is insufficient evidence of particularized prejudice, a sufficiently lengthy delay
may create a presumption of prejudice (also sometimes called presumptive prejudice). The United
States Supreme Court has recognized that a lengthy delay can be sufficient for prejudice to be
presumed. Doggett, 505 U.S. at 655. The Court noted:

 [T]hough time can tilt the case against either side . . . one cannot generally be sure
which of them it has prejudiced more severely. Thus, we generally have to recognize
that excessive delay presumptively compromises the reliability of a trial in ways that
neither party can prove or, for that matter, identify. While such presumptive
prejudice cannot alone carry a Sixth Amendment claim without regard to the other
Barker criteria, . . . it is part of the mix of relevant facts, and its importance increases
with the length of delay.


Id. at 655-56. The Texas Court of Criminal Appeals has noted "affirmative proof of particularized
prejudice is not essential to every speedy trial claim." Dragoo, 96 S.W.3d at 315; see Orand v. State,
254 S.W.3d 560, 570 (Tex. App.--Fort Worth 2008, pet. ref'd) (finding violation of right to speedy
trial based on presumptive prejudice when trial occurred fourteen years after offense). We note that
a five-year delay, under the appropriate circumstances, may be sufficient to create a presumption of
prejudice. (16)

 The primary difference between this case and those cases finding presumptive prejudice lies
in the fact that Dokter acquiesced in the delay. In Doggett, the trial court found that the accused was
unaware of the pending indictment for eight and a half years. Doggett, 505 U.S. at 653. The Court
emphasized that the delay was not extenuated by the defendant's acquiescence. Id. at 656. 
Presumptive prejudice is "extenuated . . . by the defendant's acquiescence" in the delay. Dragoo, 96
S.W.3d at 315 (quoting Doggett, 505 U.S. at 658). In Shaw, the Texas Court of Criminal Appeals
held the "appellant's longtime acquiescence in the delay" extenuated any presumptive prejudice. 
Shaw, 117 S.W.3d at 890. Dokter's acquiescence in the delay was longer than Shaw's acquiescence. 
There is no dispute that Dokter knew of the pending charges and failed to file a request for a speedy
trial until approximately fifty-five months after his arrest on those charges. Any presumptive
prejudice created by the fifty-eight-month delay was extenuated by Dokter's acquiescence in the
delay for almost fifty-five months. (17) As such, we are unable to conclude prejudice should be
presumed under the facts of this case. The last Barker factor weighs against a finding of a speedy
trial violation.

 G. Weighing of Barker Factors Is Judicial Decision

 Now that we have assigned the relative weight to each relevant factor, giving deference to
the trial court's findings of fact, we must consider the four Barker factors in the aggregate, along with
any other relevant circumstances as may be known by the reviewing court. Barker, 407 U.S. at 533;
Zamorano, 84 S.W.3d at 648, 654-55. We must balance the respective strengths of those factors
against the relative weights of the remaining factors "in light of 'the conduct of both the prosecution
and the defendant.'" Zamorano, 84 S.W.3d at 648; see also Barker, 407 U.S. at 530.

 As noted above, the almost five-year length of delay weighs heavily in favor of finding a
violation of the right to a speedy trial and the anemic reasons for the delay weigh slightly in favor
of finding a violation. However, these factors are outweighed by the remaining two factors. Dokter
failed to make a timely assertion of his right to a speedy trial. Because the record contains only
extremely marginal evidence of particularized prejudice and Dokter's acquiescence in the delay
extenuated any presumptive prejudice, the last and most important factor weighs against a finding
of a speedy trial violation. The trial court did not err in finding Dokter's right to a speedy trial was
violated based on the evidence presented in this case. 

III. Conclusion

 Although there is no good excuse for the almost five-year delay in this run-of-the-mill
criminal case, the record here does not demonstrate a violation of Dokter's right to a speedy trial. 
While the length of the delay and the State's explanations favor a finding that Dokter's right to a
speedy trial was violated, Dokter's failure to assert that right and the absence of evidence that the
delay occasioned prejudice to his ability to defend cause the record to fail to establish such a speedy
trial right violation. 

 We affirm.



 Bailey C. Moseley

 Justice


Date Submitted: January 27, 2009

Date Decided: February 13, 2009


Publish
1. Johnson was employed at the same hospital with Driscoll, but did not know him well.
Nevertheless, after the initial verbal confrontation, Johnson had told Driscoll that "we were going
to kind of get your back if something broke out." 
2. Sheri McCarty, Dokter's girlfriend, testified that the incident became a brawl and estimated
that at least three individuals attacked Dokter. 
3. McCarty testified she did not see Puckett hit anyone, but admitted to telling Puckett that he
needed to back Dokter up. 
4. Johnson testified that after Puckett had hit Driscoll with the pool cue, both Dokter and
Puckett punched Driscoll while he was lying on the floor. John Adami testified that Dokter punched
Driscoll while Driscoll was on the floor. According to Adami, he punched Puckett after Puckett
struck Driscoll with the pool cue. Adami testified he joined the fight because of the way Puckett hit
Driscoll with the pool cue. Wheeler testified that after he punched Dokter, Dokter jumped on top
of Wheeler and started punching Wheeler. 
5. After the fight had subsided, Driscoll had difficulty breathing and was bleeding in the brain. 
Wheeler, who was a nurse, immediately began performing CPR on Driscoll with the assistance of
another bar patron who was an EMT. Before the assault, Driscoll was employed as a nurse in the
intensive care unit. As part of his employment, Driscoll supervised and trained other nurses. 
Driscoll suffered permanent vision loss and still suffers from a number of cognitive problems. 
Although Driscoll is currently employed as a nurse, he was unable to work for several years, is
currently working in a different department, and does not supervise and train other nurses. 
6. While the Texas Constitution provides an independent speedy trial guarantee, the Texas
Court of Criminal Appeals has traditionally analyzed speedy trial claims using the same analytical
framework required under the United States Constitution. Zamorano, 84 S.W.3d at 648. 
7. The term "presumptively prejudicial," as used in this context of the Barker analysis, does
not involve a statistical probability of prejudice to the defendant; "it simply marks the point at which
courts deem the delay unreasonable enough to trigger the enquiry." Doggett v. United States, 505
U.S. 647, 652 n.1 (1992). This "presumptively prejudicial" threshold is a different context from the
presumptive prejudice discussion below. See State v. Munoz, 991 S.W.2d 818, 822 (Tex. Crim.
App. 1999) (explaining the different contexts).
8. We note the State argues Dokter failed to secure a ruling on his motion for new trial. At the
hearing on the motion to dismiss, the trial court refused to rule. The trial court stated: 


 [I]t's premature to [rule] until we see more about whether these witnesses are out
there. And really we need to find out what their memories are like. I'm concerned
about a five-year gap, asking someone to remember what took place. I'm not
prepared to grant a Motion to Dismiss on Speedy Trial at this particular moment.


Dokter requested a ruling at least three times during the trial. On the first occasion, the trial court
stated it would carry the motion with the case. On the second occasion, the trial court ruled the
motion was denied, but would be carried for a while. After the State rested, Dokter asked the trial
court to rule on the motion to dismiss, which had been "held under advisement up until this point." 
The trial court ruled, "It's denied," but stated, "Reserve the right to review it as the trial goes along." 
The State argues Dokter failed to obtain a ruling. The State has not provided this Court with any
authority to support its argument other than Rule 33.1 of the Texas Rules of Appellate Procedure. 
To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient
specificity, and (3) obtain an adverse ruling either expressly or implicitly. Tex. R. App. P. 33.1;
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This case is distinguishable from cases
where the trial court failed to rule, but stated it reserved the right to rule at a later point. See, e.g.,
Stone v. State, Nos. 12-06-00418-CR & 12-06-00419-CR, 2008 Tex. App. LEXIS 6738 (Tex.
App.--Tyler Sept. 10, 2008, no pets.) (mem. op., not designated for publication). In this case, the
trial court affirmatively ruled on the motion, but merely reserved the right to review sua sponte its
ruling. Because the trial court did not revisit the issue, its original definitive ruling still stands. Error
was preserved for our review.
9. The attorney had recently been elected district attorney in another county, and the parties
agreed to the introduction of the affidavit in lieu of testimony.
10. On cross-examination at the hearing on the motion to dismiss, Dokter admitted his attorney
had moved his office to Dallas at some point. Dokter did not testify when this occurred and testified
he was not aware of any impact the move had on his case. The affidavit filed by the former district
attorney likewise fails to specify when the office was moved. 
11. The record contains a letter from Dokter's attorney to another court concerning another case
which references a hearing in this case set for January 20, 2006. There is an unsigned notation which
provides "Reset Felony Hold to 3/27/06." 
12. The State presented no evidence that this case was complex or unusually difficult to
prosecute. Cf. Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992).
13. We have recently found a speedy trial violation in a case concerning Dokter's co-defendant,
Puckett, who was charged similarly with Dokter because of the same assault. Puckett v. State, cause
number 06-08-00085-CR. In Puckett, however, the defendant presented evidence of three witnesses
who could not be located and introduced evidence of what those witnesses' expected testimony
would be. Id. In contrast, the record here only establishes the existence of one missing witness and
fails to contain evidence of what was expected to have been elicited from that testimony. In Puckett,
there was evidence that a plea agreement had been reached, but not formalized; Puckett's defense
counsel took the stand and testified that the former assistant district attorney who was then in charge
of the case had announced in open court that the charges against Puckett would be reduced to a
misdemeanor, testimony which was borne out by the record of the court reporter. Id. The record in
Puckett also contained evidence that identified the period of years between the State's in-court
statement that "we have a deal" and the subsequent refusal by the successor prosecutor to honor that
agreement. Id. The evidence that a plea agreement had been reached in Puckett and relied upon by
Puckett and the quantity of proof as to the evidence which was expected to be provided by missing
witnesses were major distinctions between the two cases.
14. Dokter testified he was arrested for driving while intoxicated in another county while out
on bond, but had not served any additional time for this case. 
15. Waldon and Adami testified at trial.
16. See Zamorano, 84 S.W.3d 647 (four-year delay where defendant repeatedly asserted speedy
trial after two and a half years); Guajardo v. State, 999 S.W.2d 566, 570 (Tex. App.--Houston [14th
Dist.] 1999) (five-year delay created presumption of prejudice, but state rebutted the presumption);
State v. Flores, 951 S.W.2d 134, 144 (Tex. App.--Corpus Christi 1997, no pet.) (four-year lapse
between offense and indictment presumptively prejudicial).
17. Other Texas courts have held similarly when faced with both a lengthy delay and a lengthy
acquiescence in the delay. See Dragoo, 96 S.W.3d at 316 (three-and-a-half-year delay not
presumptive prejudice because of defendant's acquiescence); Pinnock v. State, 105 S.W.3d 130, 137
(Tex. App.--Corpus Christi 2003, no pet.) (no presumptive prejudice due to fifty-month delay when
defendant did not assert right); Harlan v. State, 975 S.W.2d 387, 391 (Tex. App.--Tyler 1998, pet.
ref'd) (four-year delay not presumptive when defendant failed to timely assert right).