

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00057-CR
_____

MARIE ELAINE BLACK, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 3
Denton County, Texas
Trial Court No. CR-2021-01426-C

---

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant Marie Elaine Black appeals her conviction for the Class A misdemeanor offense of driving while intoxicated with a prior conviction. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(a). The sole issue she raises on appeal is whether the trial court erred by denying her motion to dismiss on speedy trial grounds. *See* U.S. Const. amends. VI, XIV. We will affirm.

## I. Timeline

Because in evaluating a speedy trial claim, the timeline of events is key,[1] we begin with the pertinent chronology of events:

- December 14, 2019: Black was arrested for DWI by the Corinth Police Department, and a sample of her blood was drawn.

- December 16, 2019: Black bonded out of jail. As a condition of her bond, she was required to install an ignition interlock system in her car.

- December 23, 2019: Black's attorney filed a letter of representation with the Denton County Clerk's office using Black's warrant number as the point of reference since Black's DWI case had not yet been filed. In the letter, the attorney stated, "We request speedy trial." This letter was served on two

---

[1]*See, e.g.*, *Cochnauer v. State*, No. 02-19-00165-CR, 2021 WL 3931914, at *1–2 (Tex. App.—Fort Worth Sept. 2, 2021, no pet.) (mem. op., not designated for publication) (listing timeline of relevant facts for speedy trial analysis).

individuals at the Denton County District Attorney's Office, although their role in prosecuting the case against Black was never explained.[2]

- January 29, 2020: The police department hand-delivered Black's blood sample to a Department of Public Safety (DPS) laboratory to test the alcohol concentration level.

- July 7, 2020: A DPS analyst finished testing Black's blood sample.

- July 22, 2020: DPS sent the blood test results to the Corinth Police Department.

- July 27, 2020: The police department sent Black's case to the Denton County District Attorney's Office.[3]

- October 20, 2020: The district attorney's office created Black's file and assigned the case to a prosecutor for review.

- January 14, 2021: A different prosecutor—not the attorney who generally handled DWI intake, and neither of the individuals who had been served with

---

[2]What is clear from the record is that the two attorneys who received service in 2019 were not the attorneys who filed the complaint and information, nor were they the attorneys who appeared at Black's speedy trial hearing, nor did they testify at that speedy trial hearing. Furthermore, Black's electronic service records showed that neither of the two attorneys opened the document.

[3]A sergeant with the Corinth Police Department later testified that his department had an agreement with the district attorney's office to "keep things simpler" by waiting to send the office cases until after the police department had received test results from the DPS lab.

the December 2019 letter of representation—reviewed Black's case and signed the complaint.

- February 2, 2021: Black's attorney sent the district attorney's office a second letter of representation, identical to the one he had initially filed in December 2019, but this time it was mailed to the elected criminal district attorney via certified mail.

- February 23, 2021: Black filed a one-sentence motion for speedy trial with the county clerk,[4] despite the fact that the DWI charges had not yet been filed against her, and therefore, the county clerk had not yet opened a file related to Black's December 14, 2019 arrest. Black electronically served the motion on the elected criminal district attorney but he never opened the file. Black also served the motion on another individual at the district attorney's office whose role in the case is unclear[5] but who, according to the electronic records, did open the file.

---

[4]The entirety of Black's speedy trial motion stated: "Now comes Marie Elaine Black, Defendant, and files this request for speedy trial under the 6th Amendment to the US Constitution, Article 1 Section 10 of the Texas Constitution[,] and Article 1.05 of the Texas Code of Criminal Procedure."

[5]The individual served with the February 2021 speedy trial motion was not one of the two people who had been served with the December 2019 letter of representation, nor was she the DWI intake attorney, nor was she the person who had signed Black's complaint.

- March 5, 2021: The district attorney's office filed the complaint and information, formally charging Black with the December 2019 DWI offense.[6] *See* Tex. Penal Code Ann. §§ 49.04, 49.09(a).

- March 26, 2021: Black filed a single-sentence motion to dismiss her case on speedy trial grounds:

  COMES NOW, MARIE ELAINE BLACK, through her Attorney of Record . . . and asks the Court to dismiss this Cause and would show in support:

  The State has violated Defendant's Right to a Speedy Trial in violation of the 6th Amendment to the US Constitution and in violation of Article 1 Section 10 of the Texas Constitution.

- April 6, 2021: Black requested that her case be set for an announcement hearing in May.

- April 20, 2021: The trial court heard Black's speedy trial motion to dismiss. Five witnesses testified: a DPS forensic analyst, a sergeant with the Corinth Police Department, the intake prosecutor assigned to handle DWIs for the district attorney's office, a records custodian for Black's trial counsel's law office, and Black herself. At the close of the hearing, the State indicated that it would "set

---

[6]Black's information alleged two enhancements: a blood alcohol concentration of 0.15 or more and a prior conviction for DWI. Either would have been sufficient to enhance Black's offense to a Class A misdemeanor, *see* Tex. Penal Code Ann. §§ 49.04(d), 49.09(a), although using the prior conviction as an enhancement required "a minimum term of confinement of 30 days," *id.* § 49.09(a). Black's judgment reveals that she pleaded to "DWI 2ND."

5

this case at the forefront of [its] trial docket to ensure [that] it [wa]s tried as soon as . . . allow[ed]." The trial court ordered the parties to submit briefs on the speedy trial issue.

- April 28, 2021: The parties filed their briefs with the trial court.

- May 5, 2021: The trial court denied Black's speedy trial motion and made findings of fact and conclusions of law.

- May 19, 2021: Black waived her right to a jury trial, pleaded nolo contendre to the offense, and conceded the enhancement. The trial court sentenced her, probated the sentence for 20 months, and placed Black on community supervision for that period of time.

On appeal, Black argues that the trial court erred by denying her motion to dismiss because the State violated her Sixth Amendment right to a speedy trial.[7] *See* U.S. Const. amend VI.

---

[7]In the trial court, Black asserted her right to speedy trial under both the United States and Texas Constitutions. On appeal, though, she only asserts her right under the United States Constitution. *But see Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) ("The Texas constitutional speedy trial right exists independently of the federal guarantee, but [the Court of Criminal Appeals] has traditionally analyzed claims of a denial of the state speedy trial right under the [federal] factors established in *Barker v. Wingo*.").

## II. The Law Regarding the Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees the accused in all criminal prosecutions the right to a speedy trial.[8] *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184 (1972); *see* U.S. Const. amend VI. The Supreme Court has qualified the broad sweep of the Constitution's Speedy Trial Clause by analyzing the issue in terms of four factors: (1) "whether delay before trial was uncommonly long"; (2) "whether the government or the criminal defendant is more to blame for that delay"; (3) "whether, in due course, the defendant asserted h[er] right to a speedy trial"; and (4) "whether [s]he suffered prejudice as the delay's result." *Zamorano*, 84 S.W.3d at 647–48 (quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); *see Barker,* 407 U.S. at 530, 92 S. Ct. at 2192; *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). All four of these factors—known as the *Barker* factors—are related, and no factor alone is dispositive. *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193.

"[T]he length of the delay is, to some extent, a triggering mechanism" for the balancing test as a whole. *Lopez*, 631 S.W.3d at 113 (quoting *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003)). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192; *see Lopez*, 631 S.W.3d at 113 (similar);

---

[8]The right to a speedy trial is extended to the states by the Due Process Clause of the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184 (1972); U.S. Const. amend. XIV.

*Dragoo*, 96 S.W.3d at 313–14.  If the length of delay is presumptively prejudicial, the State has the burden to justify the delay.  *Harper v. State*, 567 S.W.3d 450, 459 (Tex. App.—Fort Worth Jan. 10, 2019, no pet.); *see Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994).  The defendant, in turn, has the burden to both prove her diligent assertion of her right to a speedy trial and to show prejudice.  *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).  But the defendant's burden on these latter two factors varies inversely with the State's culpability for the delay; the greater the bad faith or official negligence on the part of the State, the less a defendant must show assertion of the right or prejudice.  *Cantu*, 253 S.W.3d at 280–81; *Bender v. State*, No. 02-17-00342-CR, 2018 WL 4401745, at *5 (Tex. App.—Fort Worth Aug. 23, 2018, no pet.) (mem. op., not designated for publication).

### III.  Standard of Review

In reviewing a trial court's ruling on a speedy trial dismissal motion, we apply a bifurcated standard of review:  an abuse of discretion standard for the factual components and a de novo standard for the legal components.  *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014); *Zamorano*, 84 S.W.3d at 648.  Under this standard, we defer to the trial court's resolution of disputed facts and to its right to draw reasonable inferences based on those facts.  *Gonzales*, 435 S.W.3d at 808–09; *Cantu*, 253 S.W.3d at 282.  But the balancing test as a whole is a purely legal question.  *Cantu*, 253 S.W.3d at 282.

## IV. Analysis

In her sole point, Black argues that the trial court erred by denying her motion to dismiss[9] because the *Barker* factors weigh in her favor: according to Black, (1) the length of the delay was presumptively prejudicial;[10] (2) the delay was attributable to governmental entities—the police, DPS, and the district attorney's office; (3) Black asserted her right to a speedy trial on multiple occasions; and (4) as a result of the delay, Black was required to maintain an ignition interlock system for a prolonged period of time, causing her financial and emotional stress.

### A. Length of Delay

At the outset, Black was required to make a threshold showing that the time between accusation and trial was presumptively prejudicial. *Gonzales*, 435 S.W.3d at 808; *Zamorano*, 84 S.W.3d at 648–49. An "accusation" occurs when the defendant is either arrested or formally charged with a crime. *Gonzales*, 435 S.W.3d at 809. Both

---

[9]Black's statement of the case indicates that she is appealing a motion to suppress: "Appellant filed a [m]otion to [s]uppress on October 6, 2016[,] . . . [and] filed a notice of appeal of the trial court's decision on the motion to suppress." But no motion to suppress was filed in this case, and we glean from the record that she is actually appealing the denial of her speedy trial motion.

[10]Black argues that the delay between her arrest and charge was presumptively prejudicial, but because the relevant end date is the date of Black's plea, we will examine the period of delay between Black's arrest and her plea. *Lopez*, 631 S.W.3d at 114 (describing length of delay as "the interval between accusation and trial" (quoting *Doggett*, 505 U.S. at 651–52, 112 S. Ct. at 2690)); *Fuller v. State*, 624 S.W.3d 855, 863 (Tex. App.—Fort Worth 2021, pet. ref'd) (op. on reh'g) ("Our calculation begins at the time [the defendant] was arrested and ends at the time of trial.").

9

sides agree that Black was first "accused" of DWI on the date of her arrest—December 14, 2019. And it is also undisputed that the period between the date of Black's arrest until her plea spanned more than 17 months.

Although there is no set amount of time that is necessary to trigger the *Barker* analysis, the Court of Criminal Appeals has "held that a delay of four months is not sufficient while a seventeen-month delay"—such as the delay at issue here—"is [sufficient]." *Cantu*, 253 S.W.3d at 281 (reciting *Barker* rules in an enhanced DWI case); *see Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983) (holding that 17-month delay between time appellant was first indicted for rape and time of trial was sufficient to trigger *Barker* analysis).[11] Therefore Black has met her threshold burden to show that the delay she complains of is sufficiently lengthy and "presumptively prejudicial" to trigger an analysis of the remaining *Barker* factors. *See Cantu*, 253 S.W.3d at 281; *Phillips*, 650 S.W.2d at 399.

---

[11]Even a delay far less than 17 months has been held sufficient to trigger the *Barker* analysis in other enhanced DWI cases. *See State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *6 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication) (holding delay of eight months was "not an extraordinary delay" but was "just past the minimum needed to trigger a *Barker* analysis" in misdemeanor second-offense DWI case); *State v. Burckhardt*, 952 S.W.2d 100, 102–03 (Tex. App.—San Antonio 1997, no pet.) (holding that 14-month delay from DWI arrest to dismissal hearing "necessitate[d] an analysis of the remaining *Barker* factors"); *see also Lopez*, 631 S.W.3d at 114 ("Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis."); *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (noting that "courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* [i]nquiry'" (*quoting Dragoo*, 96 S.W.3d at 314)).

10

**B. Reasons for the Delay**

"If a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay." *Harper*, 567 S.W.3d at 459; *see Emery*, 881 S.W.2d at 708. When engaging in an analysis of this second *Barker* factor, a sliding scale applies with different weights assigned to different reasons for the delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *see Balderas*, 517 S.W.3d at 768. There are three categories of reasons on this sliding scale: a deliberate reason, a neutral reason, and a valid reason.

As to the first category, "[d]eliberate conduct by the State will, of course, weigh heavily against the State." *Fuller*, 624 S.W.3d at 864; *see Balderas*, 517 S.W.3d at 768. For the second category—delays resulting from a non-deliberate or otherwise neutral reason, such as negligence or overcrowded courts—these delays will still weigh against the State, but less heavily than would deliberate conduct. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Fuller*, 624 S.W.3d at 864. If the State fails to give a reason for the delay, this is tantamount to a neutral reason; the factor will weigh against the State, but less heavily than would deliberate conduct. *See Dragoo*, 96 S.W.3d at 314 (noting that in the case of an unexplained delay, the court "may presume neither a deliberate [delay] . . . nor a valid reason"). And, finally, if the delay resulted from a valid reason, such as a missing witness, this factor does not weigh against the State at all. *Fuller*, 624 S.W.3d at 864.

We agree with Black that the delays here can be divided into four segments: (1) the police department's delay in delivering Black's blood to DPS, (2) the delay in

testing at DPS, (3) the district attorney's office's delay in assigning an intake attorney to review the case, and (4) the district attorney's office's delay in filing formal charges. *Cf. Murphy v. State*, 280 S.W.3d 445, 453 (Tex. App.—Fort Worth 2009, pet. ref'd) (parsing a seven-year delay into three distinct time periods).

### 1. Delayed Delivery by the Police Department: 46 Days

Beginning with the police department's 46-day delay in delivering Black's blood sample to DPS, this delay weighs against the State, but not heavily. At the speedy trial hearing, a sergeant with the Corinth Police Department explained that the 46-day delay was caused by a six-week medical leave taken by the administrative assistant who would have normally hand-delivered blood samples to DPS to preserve the chain of custody. Although the sergeant had temporarily "tak[en] over her job" during her leave, he testified that he did not deliver Black's blood sample because he was "not able to go to the lab during that time." He offered no other explanation for the 46-day delay, and when questioned by Black's counsel, the sergeant acknowledged that he could have mailed the blood to the lab.

Short-staffing is an example of a neutral reason for delay that should be weighed slightly against the State. *Cf. Strunk v. U.S.*, 412 U.S. 434, 436, 93 S. Ct. 2260, 2262 (1973) (reiterating in dicta that "[u]nintentional delays caused by . . . understaffed prosecutors are among the factors to be weighed [against the State but] less heavily than intentional delay"); *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (explaining that neutral reasons such as overcrowded courts weigh against the State "since the ultimate

12

responsibility for such circumstances must rest with the government rather than with the defendant"); *cf. also Santibanez v. State*, 717 S.W.2d 326, 331 (Tex. Crim. App. 1986) (rejecting argument that "lack of sufficient personnel" in district attorney's office qualified as an exceptional circumstance under the former Speedy Trial Act).  Although such delay is not deliberate, "[t]he government must bear responsibility for failing to provide adequate resources to law-enforcement agencies." *Ex parte Martin*, 33 S.W.3d 843, 846–47 (Tex. App.—Austin 2000) (op. on reh'g) (applying speedy trial test in review of dismissal under Tex. Code Crim. Proc. Ann. art. 32.01, addressing delay due to short-staffing at police department, and commenting that defendant "could not be expected to suffer an indefinite delay of her case because the police department was without a secretary"), *pet. dism'd, improvidently granted*, 46 S.W.3d 932 (Tex. Crim. App. 2001); *see State v. Fisher*, 198 S.W.3d 332, 338–39 (Tex. App.—Texarkana 2006, pet. ref'd) (quoting *Martin* in speedy trial case and addressing State's delay in submitting drugs to lab).  Although we recognize a difference between a temporarily absent employee and chronic short-staffing, that difference may begin to blur when the allegedly temporary absence continues for an extended period of time and the absent employee's responsibilities are piled on top of another colleague's job duties.

Such was the case here.  The sergeant who took over the absent assistant's blood-delivery duties already had a job of his own, and for unexplained reasons, he was not able to fulfill the assistant's responsibilities by making lab deliveries during her six-week absence.  For all intents and purposes, this is a short-staffing situation—a non-

13

deliberate, neutral reason under the *Barker* analysis—and the police department's delay weighs against the State, although it weighs less heavily than would deliberate conduct. *See State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.) (holding that a "delay involving managing the State's resources is not unlike one caused by a backlog of cases or a shortage of staff[ and] it weighs slightly against the State").

### 2. Delayed Testing at DPS: 175 Days

The delay at DPS also weighs against the State, but not heavily. This delay occurred from the time that DPS received Black's blood sample on January 29, 2020, to the date it delivered the blood alcohol content analysis back to the police department on July 22, 2020—a total delay of 175 days. The State contends that this delay was caused by COVID-19, but the DPS analyst's testimony shows otherwise.

At the speedy trial hearing, the DPS analyst who tested Black's blood minimized the impact of COVID-19 on her job. She testified that the lab continued to work throughout the pandemic and "didn't completely shut down" at any time but merely "slow[ed] up" for a "few months" while the analysts "were sent home [to work] part[]time."[12] According to the analyst, well before the test was completed—by "May or June" of 2020—DPS analysts had returned and were working fulltime.[13] So, based

---

[12]It is unclear whether, during the "slow up," the analysts worked parttime at the laboratory, worked parttime from their homes, or worked fulltime but split their time between the laboratory and their homes.

[13]In its findings of fact, the trial court stated that the DPS analyst had testified that "full staff did not return [from the pandemic] until this month meaning April

14

on the analyst's testimony, even if the DPS analysts immediately began working parttime on March 13, 2020, when the Texas Governor issued a disaster proclamation regarding COVID, the lab's "slow up" could have lasted no more than two to three months—until "May or June." *See* The Governor of the State of Tex., Proclamation 41-3720, 45 Tex. Reg. 2094, 2094–95 (2020). And even then, the analysts were still working; the lab did not shut down. At most, the pandemic was a contributing factor during approximately 90 of the 175 days (roughly one-half) of DPS's delay.[14]

Instead, the DPS analyst attributed the primary reasons for delay to short-staffing and backlog. She explained that the lab had been short-staffed in 2020 and although it should normally take "maybe, about a week" to conduct the test and send back a report, in 2020 the lab had a backlog of 3,000 to 4,000 cases, making a 175-day delay "normal."

---

2021." The analyst actually testified, though, that her lab returned from the pandemic after just "a few months," in "May or June" 2020, but that the lab was short-staffed and did not have "five full-time analysts" on staff "until this month," i.e., April 2021.

[14]*Cf. Conatser*, 645 S.W.3d at 929–30 (holding that delay after filing case was "caused by the onset of a pandemic [and] c[ould ]not be attributed as fault to the State" when the defendant acknowledged that "no jury trials were occurring" during the five-month period of delay); *Ex parte Sheffield*, 611 S.W.3d 630, 634 (Tex. App.—Amarillo 2020) (noting that COVID-19 restrictions were subject to constitutional limitations and reversing denial of motion for speedy trial because the trial court had stated that "the State's ready but . . . the Office of Court Administration has instructed me that I'm not allowed to conduct any jury trials until they let me know"), *pet. granted*, No. PD-1102-20, 2021 WL 5561540 (Tex. Crim. App. Nov. 24, 2021) (order) (not designated for publication).

15

In other words, it was short-staffing, not the pandemic, that caused the DPS lab to lag six months behind schedule.

As explained above, short-staffing and backlog are neutral reasons and weigh against the State, though not heavily. *See Sample v. State*, No. 03-19-00817-CR, 2022 WL 2960241, at *4 (Tex. App.—Austin July 27, 2022, no pet. h.) (op. on reh'g) (concluding that "[t]he main reason for the delay seems to have been problems in the DNA testing system, which is the type of problem that weighs against the State but not heavily"); *Fuller*, 624 S.W.3d at 865 (concluding that three-year delay in DNA testing in capital murder case "weigh[ed] against the State but not heavily" because the delay was not deliberate); *Giles v. State*, No. 13-17-00238-CR, 2019 WL 1186880, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 14, 2019, pet. ref'd) (mem. op., not designated for publication) (concluding that delay caused by backlog at drug lab weighed against the State but not heavily). So, as with the police department's delay in delivering the blood sample to DPS, the delay at DPS also weighs against the State, but not heavily.

### 3. Delayed Assignment at the District Attorney's Office: 85 Days

The next chunk of Black's 17-month delay occurred while the case sat in the district attorney's system awaiting the assignment of an intake attorney. On July 27, 2020, after receiving the lab results from DPS, the police department referred Black's

case to the district attorney's office.[15]  But the district attorney's office waited 85 days—until October 20—to create a file or assign Black's case to an intake attorney for review.  This 85-day delay was not explained.[16]  The State's failure to give a reason for this delay weighs slightly against the State.  *See Dragoo*, 96 S.W.3d at 314 (holding that if the State fails to give a reason for delay, the factor will be considered neutral and weigh slightly against the State).

### 4.  Delayed Filing at the District Attorney's Office:  136 Days

The final delay came after the case had been assigned to an intake attorney for review.  Although the district attorney's office assigned the case on October 20, the office waited another 136 days, until March 5, 2021, to file the case.  The State tried to pin the blame for this delay on COVID-19, conceding to the trial court that, "[p]re-COVID, yes, . . . it would have needed to be filed much sooner than five months."

---

[15]DPS emailed the Corinth Police Department the lab results on July 22, 2020, but the department did not send Black's case to the district attorney's office until July 27, 2020.  The police department offered no explanation for this five-day delay.

[16]At the speedy trial hearing, the State argued that it did not receive the lab results until October 13, which is why the case had not been assigned to an intake attorney.  But the State offered no evidence to support this position, and the trial court's findings of fact indicate that it did not find the State's argument persuasive.  *See Kelly v. State*, 163 S.W.3d 722, 728 (Tex. Crim. App. 2005) (recognizing in speedy trial case that "the trial court is permitted to disbelieve evidence so long as there is a reasonable articulable basis for doing so").  Moreover, even in its arguments to the trial court, the State acknowledged that it "d[id] not have [a] specific reason" for its delay.

But the State offered no evidence to support its COVID-19 excuse. There was no evidence that between October 2020 and March 2021 the intake attorneys were unable to work due to COVID-19 infections. Nor was there was any evidence that the intake attorneys were on leave caring for loved ones infected with COVID-19. *Cf. Conatser*, 645 S.W.3d at 929–30 (attributing delay to COVID-19 where defendant acknowledged that, even if he had wanted a trial, no jury trials were occurring during the relevant period of delay).

Rather, the State explained in its closing argument that "during the global pandemic, unfortunately, with [the district attorney's office] having people working from home and not all being in the office at the same time, . . . five months is [not] a long delay." Even if we were to consider this unsworn argument as testimonial evidence, it would not advance the State's position. [17] The gist of the State's argument

_____

[17]The misdemeanor intake prosecutor who testified shed no more light on this delay but merely referenced a "backlog in [the district attorney's] office" during the relevant period of time. Again, backlog is a neutral reason that weighs against the State, though not heavily. *See Sample*, 2022 WL 2960241, at *3–4; *Fuller*, 624 S.W.3d at 864; *Fisher*, 198 S.W.3d at 339; *cf. Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (holding that "a crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily").

The intake attorney was not the attorney who had signed Black's complaint and filed her case, nor was she the attorney prosecuting Black's case at the hearing. And when the trial court asked the attorney prosecuting Black's case—who had not been sworn as a witness—to explain the delayed filing, she stated that she believed the attorney who had signed the complaint "did not receive the case in October of 2020" but instead "received it sometime in January of 2021 because that is when [the district attorney's office] started having all ADAs helping out with intake because they were so backlogged." The prosecutor explained that Black's case "most likely was assigned to

18

was that during the pandemic, employees who were allowed to work from home were not able to perform their jobs as well as they would have if they had been working from the office. The State did not argue—much less offer evidence—that a governmental dictate required the district attorney's office to allow employees to work from home between October 20, 2020, and March 5, 2021. *Cf.* The Governor of the State of Tex., Exec. Order GA-18, 45 Tex. Reg. 2933, 2934–35 (2020) (issued Apr. 27, 2020, providing for limited May 1, 2020 reopening of a variety of businesses as well as "[l]ocal government operations" that "[we]re not already 'essential services,'" and recommending that businesses "work from home *if possible*" (emphasis added)); The Governor of the State of Tex., Exec. Order GA-08, 45 Tex. Reg. 2271, 2271 (2020) (issued Mar. 19, 2020, providing for continued operation of "critical infrastructure" and "essential services" but limiting operation of nonessential businesses). Instead, the district attorney's office made a conscious choice to permit employees to work from home during that time period, even though—at least according to the State's argument here—the employees working from home were unable to get their jobs done in a timely fashion. The 136-day delay was not caused by COVID-19 but by the office's decision

---

[the intake prosecutor who had testified] at the beginning," but the prosecutor who had filed the case probably "went in and got the case" because all of the assistant district attorneys were "just grabbing stacks of them to work on in intake." *Cf. Lopez*, 631 S.W.3d at 115 (rejecting allegedly implied finding of fact in speedy trial case because "the only statements supporting th[e] conclusion were unsworn statements by counsel for [the defendant] and thus not competent evidence").

to permit nonproductivity. The district attorney's office cannot make such a conscious choice and then rely on that choice to deprive a defendant of her constitutional rights.

Overall, then, each of the four segments of delay weighs against the State, though not heavily.

## C. Assertion of the Right

While it is the State's duty to bring the defendant to trial, the defendant bears the burden to show that she timely asserted her right. *Cantu*, 253 S.W.3d at 280, 282–83; *see Barker*, 407 U.S. at 529, 92 S. Ct. at 2191. Courts may "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker*, 407 U.S. at 529, 92 S. Ct. at 2191; *see Murphy*, 280 S.W.3d at 454 ("Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, only a dismissal."). And the defendant's assertion of her speedy trial right is entitled to "strong evidentiary weight." *Zamorano*, 84 S.W.3d at 651.

Here, while Black asserted her right on four separate occasions, all four assertions lacked force.

She first asserted her right to a speedy trial on December 23, 2019, nine days after her offense. While this assertion occurred promptly after her arrest, *see Sanchez v. State*, No. 01-17-00751-CR, 2018 WL 6377140, at *3 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op., not designated for publication) (noting that defendant's assertion of his right to a speedy trial a month after his arrest was prompt),

it was halfhearted at best—a short pro forma sentence in her counsel's letter of representation with no citations or legal arguments and filed on the same day as two other preliminary motions. *See Barker*, 407 U.S. at 529, 92 S. Ct. at 2191 (noting that a court need not "attach[] significant weight to a purely pro forma objection"); *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999) (noting that the defendant's "*pro forma* request for a trial date in the waiver of arraignment form cannot be considered an assertion of his right to a speedy trial"); *Clarke v. State*, 928 S.W.2d 709, 714 (Tex. App.— Fort Worth Aug. 8, 1996, pet. ref'd) (op. on reh'g) (holding that the third *Barker* factor weighed against the defendant in part because he "filed his motion for a speedy trial on the same day he filed 32 other motions"). Plus, the letter was filed with the county clerk even though it related to a case that had not yet been filed, and it was served on two members of the district attorney's office whose connection with Black's case remained unexplained. At the conclusion of the speedy trial hearing, Black's counsel admitted that he did not follow up on his letter of representation or call the district attorney's office to bring the speedy trial request to the office's attention. The letter of representation was thus a weak assertion of Black's speedy trial right.

Black then waited more than a year to reassert her right to speedy trial before raising it twice in February 2021. *Cf. Vega-Gonzalez v. State*, No. 03-19-00413-CR, 2020 WL 7051187, at *9–10 (Tex. App.—Austin Dec. 2, 2020, no pet.) (mem. op., not designated for publication) (holding that third *Barker* factor weighed against the defendant in part because, although he invoked his right to a speedy trial twice, he

21

waited to do so until more than two years after his arrest and then did not reassert the right until he moved to dismiss). And these two assertions were likewise pro forma.

One assertion was made by forwarding a copy of Black's counsel's year-old letter of representation to the elected criminal district attorney via certified mail. And Black's counsel acknowledged at the speedy trial hearing that he "highly doubt[ed] that [the] letter made it from [the elected criminal district attorney] to anybody in intake." The other was a one-sentence motion that was (again) filed with the county clerk before Black's case was filed[18] and served on the elected criminal district attorney and on another individual who had no explained connection to the case.[19] *Cf. State v. Flores*, 951 S.W.2d 134, 141–42 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.) (detailing defendant's actions during four-year delay, including defendant's testimony that he asked two attorneys about strategies to expedite his case and repeatedly called the district attorney's office); *see also Cantu*, 253 S.W.3d at 283 & n.47 (commenting that

---

[18]Generally, "one cannot file a motion for a speedy trial until formal charges are made" because there is no case in which to file the motion and no trial court responsible for hearing it. *Cantu*, 253 S.W.3d at 283. Nonetheless, Black filed a one-sentence speedy trial motion with the county clerk before she was formally charged by information. It is unclear what the county clerk did—or could have done—with the motion between February 23, 2021, the day it was filed with the clerk and the day Black was formally charged, on March 5, 2021.

[19]Black's documentation also reveals that her counsel made multiple speedy trial motions in other cases on the same date—February 23—that he filed Black's speedy trial motion. All six speedy trial motions were also served on the same two individuals—the elected criminal district attorney and the county employee with an unidentified role.

"[a]lthough one cannot file a motion for a speedy trial until formal charges are made, the right to one can be asserted in other ways" and citing *Flores* as an example). Neither of these two assertions contained any case-specific arguments or legal analysis. And as before, Black did not call the district attorney's office to follow up on any of her filings, to check the status of her case, or to communicate her urgency.

Thus, as with her initial speedy trial request, Black's two February 2021 speedy trial requests lacked force.

Soon thereafter, in March 2021, Black was formally charged. But rather than seeking a trial date or an immediate hearing on her previous speedy trial requests—either of which would have signaled Black's sincere desire to have a speedy trial—she filed a motion to dismiss. *Cf. Zamorano*, 84 S.W.3d at 651–52 (distinguishing appellant's repeated assertions of the right from "a case where [the] appellant never asked for a hearing"). Requesting a dismissal instead of an actual trial "generally weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one." *Murphy*, 280 S.W.3d at 454; *see Fuller,* 624 S.W.3d at 866 (holding that appellant's final assertion of his right weakened his speedy trial claim because he sought dismissal of the indictment); *Hausauer v. State*, No. 04-04-00505-CR, 2005 WL 954376, at *3 (Tex. App.—San Antonio Apr. 27, 2005, no pet.) (mem. op., not designated for publication) (holding that defendant's "motivation in asking for a dismissal, rather than a prompt trial, weighs against him"); *see also Stewart v. State*, Nos. 05-04-01718-CR, 05-05-00162-CR, 2005 WL 1607639, at *3 (Tex. App.—Dallas July 11, 2005, no pet.) (not designated

for publication) (concluding that "appellant's motion to dismiss rather than [her] demand for a speedy trial[—]one month after charges were filed[—]attenuates her claim and weighs in favor of the State").

Black's motion to dismiss came just three weeks after she had been formally charged. *See Stewart*, 2005 WL 1607639, at *3 (discounting appellant's assertion of speedy trial right when appellant filed motion to dismiss one month after she was charged). And even while the motion was pending, Black's only request for a court proceeding came in the form of a request to have her case set for an announcement hearing, not a trial.

Ultimately then, Black asserted her right four times, but all four assertions lacked force and were attenuated by her motion to dismiss. Thus, Black's assertions of her right to a speedy trial are not entitled to strong evidentiary weight.[20]

---

[20]Moreover, less than one month after the trial court ruled that Black's right to a speedy trial had not been violated, she pleaded nolo contendre and was convicted and sentenced. This too impairs Black's claim by questioning her desire to obtain a speedy trial. *See Ingram v. State*, No. 04-09-00249-CR, 2010 WL 1609696, at *4 (Tex. App.—San Antonio Apr. 21, 2010, no pet.) (mem. op., not designated for publication) ("[T]he acceptance of a plea-bargain agreement on the trial date, after the denial of a speedy trial motion, impairs the appellant's speedy trial claim by demonstrating that his motivation is not a speedy trial, but rather to avoid trial."); *Starks v. State*, 266 S.W.3d 605, 612 (Tex. App.—El Paso Sept. 25, 2008, no pet.) (holding that, although the appellant asserted his right, "the factor is substantially weakened by [his] numerous requests for dismissal of the case in his *pro se* motions and then his ultimate decision to plead guilty when his trial arrived"); *Hausauer*, 2005 WL 954376, at *3 (holding, where defendant was charged with a second DWI, that defendant's "acceptance of a plea bargain agreement at the next trial setting impairs his claim by further demonstrating that his motivation was not to obtain a speedy trial, but rather to avoid a trial"). But we do not consider the substance of Black's plea because we must review the trial

## D. Prejudice

The final *Barker* factor examines whether and to what extent Black was prejudiced by the delay. *Cantu*, 253 S.W.3d at 285. The defendant has the initial burden to make some showing of prejudice, *Munoz*, 991 S.W.2d at 826, and if a defendant makes a prima facie showing of prejudice, the burden shifts to the State to prove that the defendant "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay."[21] *Id.* (*quoting Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

---

court's ruling "in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Dragoo*, 96 S.W.3d at 313 (chastising lower court for considering speedy trial arguments not made to trial court); *see Gonzales*, 435 S.W.3d at 809 (noting that "a reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling").

[21]Additionally, "[i]n certain instances, the length of delay may be so excessive that it 'presumptively compromises the reliability of a trial in ways that neither party can prove or identify,'" and the "defendant is absolved from the requirement to demonstrate prejudice" because unless the defendant acquiesced in the delay, prejudice is presumed. *Gonzales*, 435 S.W.3d at 812–15 (quoting *Shaw,* 117 S.W.3d at 890); *see Doggett*, 505 U.S. at 655–56, 112 S. Ct. at 2693. Black does not argue that her 17-month delay was so excessive as to absolve her of the requirement to demonstrate prejudice, nor do we find the delay to be so excessive. *See Ussery v. State*, 596 S.W.3d 277, 290 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (holding three-and-one-half-year delay partially attributable to new trial judge did not relieve defendant of burden to show prejudice); *cf. Gonzales*, 435 S.W.3d at 812–15 (discussing relevant federal case law involving a five-year delay, a delay of more than eight years, and a ten-year delay, then concluding that six-year delay created presumption of prejudice); *State v. Wei*, 447 S.W.3d 549, 556–57 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding that 51-month delay in DWI case absolved defendant of burden to show prejudice).

The prejudice arising from the delay must be analyzed in light of the dangers that the speedy trial right was designed to prevent: (1) oppressive pretrial incarceration, (2) increased anxiety and concern for the accused, and (3) impairment of the accused's defense. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. "The last interest is the most important because the fairness of the entire criminal[ ]justice system is distorted when a defendant is unable to adequately prepare his defense." *Gonzales*, 435 S.W.3d at 812.

This "most important" consideration—the impairment of Black's defense—is not implicated in this case. *See id.* Black does not allege that the delay impaired her defense in any way. Nor does Black attempt to address the first danger—oppressive incarceration. Indeed, she would have had difficulty making such an argument, as she was released on bond two days after her arrest.

Black claims, though, that she experienced the second type of prejudice: increased anxiety and concern. She complains that the ongoing requirement that she maintain an ignition interlock system on her car "became unreasonable and harmful because of the State's inordinate delay in this case." Black testified that the cost of maintaining an ignition interlock device on her car was between $60 to $100 monthly and that these fees were a source of financial hardship and personal stress.[22] She also testified that the ignition interlock system was distressing for her because she suffered

---

[22]Black had initially paid $100 per month for her interlock system, but she subsequently switched interlock companies, and at the time of the speedy trial hearing, she paid $60 per month.

from COPD[23] and "ha[d] a hard time sometimes breathing long enough for [the ignition interlock system or car] to initiate," requiring her to "do it two or three times" before her car would start.[24]

A financial burden is generally considered some evidence of prejudice. *See Cantu*, 253 S.W.3d at 286 (referring to the "draining of financial resources" as one of the "major evils protected against by the speedy trial guarantee" and discussing cases in which the defendant was found to have suffered prejudice based on the evidence of a "major evil[]"); *Flores*, 951 S.W.2d at 144 (concluding that the defendant's "burden of paying $2000 each year to renew his bond should not be dismissed as insignificant and does establish some prejudice"). And the same is true of pretrial anxiety. *Cf. Cantu*, 253 S.W.3d at 285–86 (noting that "general anxiety 'is at least some evidence of the type of "anxiety" that the Supreme Court considers under the prejudice prong of *Barker*'" although, standing alone, it "is not sufficient proof of prejudice" (quoting *Zamorano*, 84 S.W.3d at 654)).

---

[23]COPD stands for chronic obstructive pulmonary disease. *See, e.g.*, *Boyer v. State*, No. 2-09-092-CR, 2010 WL 3432843, at *7 (Tex. App.—Fort Worth Aug. 31, 2010, pet. ref'd) (per curiam) (mem. op., not designated for publication) (clarifying the meaning of COPD).

[24]The trial court's findings of fact indicate that it found this testimony credible. *See Kelly*, 163 S.W.3d at 728 (recognizing in speedy trial case that "the trial court is permitted to disbelieve evidence").

However, Black primarily focused on prejudice related to the mandated ignition interlock device itself,[25] and as the State points out, an ignition interlock system is a statutorily required bond condition for repeat DWI offenses.[26] Tex. Code Crim. Proc. Ann. art. 17.441(a). *But cf. id.* art. 17.441(b) (allowing magistrate to not require ignition interlock "if the magistrate finds that to require the device would not be in the best interest of justice"). Black's ignition interlock woes do not demonstrate prejudice beyond the level normally associated with a criminal charge of enhanced DWI.

In *State v. Page*, for example, our sister court of appeals held that the general anxiety and concern associated with a statutorily required ignition interlock system did not demonstrate prejudice for speedy trial purposes. 2020 WL 1899453, at *10. There, the defendant claimed that the ignition interlock device caused prejudice because he could not valet park his vehicle, drive clients to lunch, or chauffeur his child's friends. *Id.* But the Dallas Court of Appeals recognized that "[t]he ignition interlock device . . . is required by statute for DWI repeat offenders," and it held that "any anxiety, inconvenience, or embarrassment caused by that device is not beyond that

---

[25]Black testified that her DWI charge had other detrimental impacts as well, including requiring her to pay $50 per month to Denton County, and requiring her to call her bail bondsman every Friday. The trial court noted portions of Black's testimony in its findings of fact and conclusions of law, indicating that it found such testimony credible. Nonetheless, on appeal, Black solely relies upon the ignition interlock system as the source of prejudice.

[26]Black acknowledged at her speedy trial hearing that she understood that the ignition interlock system was a "standard bond condition[]."

28

which would normally be experienced by any defendant on bond for a second DWI offense." *Id.* (citing Tex. Code Crim. Proc. Ann. art. 17.441). Although the defendant testified that the interlock device had changed his conduct and forced him to miss opportunities, there was no evidence that his "work life was impacted to any abnormal or burdensome degree." *Id.*

Similarly here, Black bore an emotional and financial burden by having to maintain an ignition interlock system on her car, but there was no evidence that this burden exceeded that normally experienced by a defendant on bond for a second DWI. *See* Tex. Code Crim. Proc. Ann. art. 17.441(a); *Page*, 2020 WL 1899453, at *10; *cf. State v. Pena*, No. 13-04-585-CR, 2006 WL 2830828, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 5, 2006, no pet.) (mem. op., not designated for publication) (holding that there was no evidence of prejudice where defendant accused of felony DWI was required to "pay a monthly service fee of around $62.75 for inspection of his ignition interlock device"); *Hausauer*, 2005 WL 954376, at *3–4 (holding that defendant charged with a second DWI failed to show prejudice in part because ignition interlock device "was not ordered by the court as a condition of his bond, but rather was a requirement imposed by the State of Texas in order for [the defendant] to get his driver's license reinstated"). Black did not testify or allege that the ignition interlock system prevented her from working, that it resulted in the loss of her job, or that it jeopardized her ability

to afford basic necessities or living expenses.[27]   Although her COPD may have impacted her ability to operate the ignition interlock system, Black testified that she had never had an instance where she could not start her car, and she clarified that there was only "[o]ne time [she] had trouble with it."

Ultimately, the record demonstrates that Black did not suffer any delay-related anxiety, burden, or concern that rose beyond the level normally associated with a second DWI charge.  *Cf. Sample*, 2022 WL 2960241, at *5 (concluding that there was no significant prejudice and noting that "even if a speedier trial had shortened the time the indecency charge was pending, it would not have avoided all of the negative effects to [the a]ppellant of being charged with indecency with a child and sexual assault of an adult").  This factor weighs in favor of the State and against Black.  *See Page*, 2020 WL 1899453, at *10; *Pena*, 2006 WL 2830828, at *4; *Hausauer*, 2005 WL 954376, at *3–4.

## E.  Balancing the Factors

Taken together, the *Barker* factors do not demonstrate a speedy trial violation. Although the length of the delay and the reason for the delay weigh slightly against the State, and although Black filed repeated assertions of her right to a speedy trial, Black's assertions lacked force, she sought dismissal of her case rather than a trial, the period

_____

[27]Regarding her income, Black testified that she received $800 per month in social security, that she made $800 per month working for the school system when school was in session, and that she "barter[ed]" with a friend to help him with errands, appointments, and chores in exchange for room and board.

of delay was not excessively long or deliberately caused, and Black did not suffer serious prejudice beyond that which she would have ordinarily experienced from a second DWI charge. *See, e.g.*, *Cantu*, 253 S.W.3d at 286–87 (holding no speedy trial violation when police department's negligence caused 16-month delay in charging DWI, trial court doubted defendant's alleged assertions of the right via counsel's calls to the district attorney's office, defendant moved for dismissal rather than trial, and defendant's anxiety did not rise to the level of "substantial" prejudice); *Ussery*, 596 S.W.3d at 291 (holding no speedy trial violation when delay extended more than three years and defendant asserted his rights multiple times, but the assertions were "undermined" by other factors, the State did not deliberately delay, defendant filed dismissal motion, and there was no serious prejudice).

The evidence in this case thus supports the trial judge's ruling; Black was not denied her Sixth Amendment right to a speedy trial. *See* U.S. Const. amends. VI, XIV. We overrule Black's sole issue.

## V.  Conclusion

Having overruled Black's sole issue, we affirm the trial court's judgment.  Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 18, 2022